# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

SARVINT TECHNOLOGIES, INC.

      Plaintiff,

v.

TEXTRONICS, INC., ADIDAS NORTH
AMERICA, INC.

      Defendants.

Civil Action File No.:
1:15-cv-00073-TCB

**JURY TRIAL DEMANDED**

# DEFENDANTS' OPPOSITION TO
# PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................1

II.   FACTUAL BACKGROUND...............................................................2

    A.    adidas and Textronics Launch of Accused Products: ...........................2

    B.    GTRC and its Prior Licensee Delayed, and Ultimately Abandoned, its Rights Relevant to adidas and Textronics. ............................................2

III.  APPLICABLE LEGAL STANDARDS ...........................................4

IV.  ARGUMENT.......................................................................................6

    A.    Equitable Estoppel Precludes Plaintiff's Claim. ...............................6

    B.    Plaintiff failed to establish it has a likelihood of success on the merits of its alleged infringement claim...........................................................8

         1.    Proper Construction of the '731 Patent: ..................................10

         2.    The adidas Defendants' Accused Products do not infringe Claim 1 of the '731 Patent. ......................................................12

    C.    Substantial Doubt as to Validity of Claim 1 Exists and Likely Success Has Thus Not Been Shown. ...............................................................14

    D.    Plaintiff has failed to prove it will suffer irreparable harm if this Court does not grant the present motion. .....................................................17

         1.    Plaintiff's delay precludes any finding of irreparable harm. .....17

         2.    Plaintiff's absence from the market confirms there is no imminent irreparable harm.......................................................19

         3.    Plaintiff has failed to show any "causal nexus" between the alleged harm and alleged infringement and failed to show inadequacy of monetary remedies. ...........................................21

    E.    The Balance of Equities Precludes the Injunctive Relief Sought. ......24

    F.    The Public Interest Would be Disserved if This Court Granted Plaintiff's Request for a Preliminary Injunction. ...............................25

V.   CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
    960 F.2d 1020 (Fed. Cir. 1992) ............................................................... 6, 19

*Abbott Labs. v. Selfcare, Inc.,*
    17 F. Supp. 2d 43 (D. Mass. 1999) .............................................................18

*Altana Pharma AG v. Teva Pharm.,*
    532 F. Supp. 2d 666 (D.N.J. 2007),
    *aff'd*, 566 F.3d 999 (Fed. Cir. 2009) .............................................................24

*Amazon.com v. Barnesandnoble.com, Inc.,*
    239 F.3d 1343 (Fed. Cir. 2001) .....................................................................9

*Anton/Bauer, Inc. v. PAG, Ltd.,*
    329 F.3d 1343 (Fed. Cir. 2003) .....................................................................4

*Apple Inc. v. Samsung Elecs. Co.,*
    678 F.3d 1314 (Fed. Cir. 2012) .....................................................................5

*Apple Inc. v. Samsung Elecs. Co.,*
    735 F.3d 1352 (Fed. Cir.  2013) ...................................................................25

*Apple Inc. v. Samsung Elecs. Co.,*
    695 F.3d 1370 (Fed. Cir. 2012) ........................................................... 5, 6, 22

*Applied Med. Res. Corp. v. U.S. Surgical Corp.,*
    147 F.3d 1374 (Fed. Cir. 1998) ...................................................................14

*Aspex Eyewear v. Clariti Eyewear,* 605 F.3d 1305 (Fed. Cir. 2010) .......................6

*Continental Can Co. v. Monsanto Co.,*
    948 F.2d 1264 (Fed. Cir. 1991) ...................................................................14

*Cordis Corp. v. Medtronic, Inc.,*
    780 F.2d 991 (Fed. Cir. 1985) .......................................................................5

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,*
    114 F.3d 1547 (Fed. Cir. 1997) ...................................................................18

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
    49 F.3d 1551 (Fed. Cir. 1995) ............................................................. 5, 18

*In re AutoHop Litig.*,
    No. 12 Civ. 4155, 2013 WL 5477495 (S.D.N.Y. Oct. 1, 2013) ....... 18, 20, 25

*In re Bond*,
    910 F.2d 831 (Fed. Cir. 1990) ....................................................................14

*Interface, Inc. v. Tandus Flooring, Inc.*,
    No. 4:13–cv–46, 2013 WL 5945177 (N.D. Ga. Nov. 5, 2013) ....................10

*Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*,
    357 F.3d 1319 (Fed. Cir. 2004) .....................................................................4

*Novo Nordisk Pharm. v. Bio-Tech Gen. Corp.*,
    424 F.3d 1347 (Fed. Cir. 2005) ...................................................................15

*Nutrition 21 v. United States*,
    930 F.2d 867 (Fed. Cir. 1991) .......................................................................4

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331 (Fed. Cir. 2003) .....................................................................9

*Open Text, S.A. v. Box, Inc.*,
    No. 5:13-CV-04910, 2014 WL 1389065 (N.D. Cal. Apr. 9, 2014) ....... 20, 25

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007) ...................................................................23

*R2 Medical Systems, Inc. v. Katecho*,
    931 F. Supp. 1397 (N.D. Ill. 1996)...............................................................18

*Radio Sys. Corp. v. Lalor*,
    709 F.3d 1124 (Fed. Cir. 2013) ............................................................. 6, 7, 8

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
    32 F.3d 1552 (Fed. Cir. 1994) .......................................................................4

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) .....................................................................5

*Titan Tire Corp. v. Case New Holland, Inc.*,
    566 F.3d 1372 (Fed. Cir. 2009) ......................................................................9

*Verdegaal Bros. v. Union Oil Co. of California*,
    814 F.2d 628 (Fed. Cir. 1987) ....................................................................14

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..................................................................................4, 9

**Other Authorities**

6A Donald S. Chisum, *Chisum on Patents* § 19.05[2][a][i]-[ii]
    (Matthew Bender) ......................................................................................7

## TABLE OF ABBREVIATIONS

| Name | Abbreviation |
| --- | --- |
| adidas North America, Inc. | adidas |
| adidas Defendants | adidas and Textronics |
| Declaration of Stacey Burr | Burr Dec. |
| Declaration of Lindsay Hopkins | Hopkins Dec. |
| Declaration of Mark Jones | Jones Dec. |
| Declaration of Douglas Kidder | Kidder Dec. |
| Georgia Tech Research Corporation | GTRC |
| Sarvint Technologies, Inc. | Sarvint |
| Sensatex Inc. | Sensatex |
| Textronics, Inc. | Textronics |
| U.S. Patent No. 3,888,240 Reinhold, Jr. et al. | Reinhold or Reinhold patent |
| U.S. Patent No. 6,970,731 | '731 Patent |

## I.    INTRODUCTION

Plaintiff has fallen far short of its high burden to prove this is the unusual case which justifies the extraordinary remedy of a preliminary injunction. Sarvint's and its predecessor's substantial delay and misleading silence demonstrate it is equitably estopped from even bringing its infringement claim. Even if considered on the merits, Sarvint has not met its burden of proof and is unlikely to succeed.  Nor can Sarvint show imminent irreparable harm.  Sarvint has failed to identify any specific harm attributable to the adidas Defendants' decade-long sale of miCoach® Apparel products ("the Accused Products").   Plaintiff admits it is not in the marketplace and there is no credible evidence that, once it enters, it will be capable of effectively competing or that it will even be a direct competitor to the adidas Defendants.

Sarvint has also greatly overstated the scope of its patent rights.  In reality, the features that are central to its patent claim already were old and well-known before the '731 Patent was filed.  Nor is there any evidence that Plaintiff's patent rights are causally linked to consumer demand for the adidas Defendants' accused products.  The accused products rely on an ecosystem of features, applications and technologies for their success in the marketplace and Plaintiff's patent rights simply do not extend to that ecosystem.   Plaintiff's motion fails on multiple grounds and should be denied.

## II.    FACTUAL BACKGROUND

### A.    adidas and Textronics Launch of Accused Products:

In 2005, Textronics "was created to develop and sell wearable sensors for use in fitness and health monitoring while also marketing its own line of clothes for personal monitoring under the brand name of NuMetrex®."  (Burr Dec. at ¶4.) Textronics viewed sportswear as an entry point and its first product was a sports bra sold under the NuMetrex® brand, intended to replace then-used chest straps. (*Id*. at ¶5.)    The accused NuMetrex® line of apparel was Textronics' first commercialization of its smart-fabric technology.  (*Id.*)

adidas acquired Textronics in September 2008.  (*Id*. at ¶2.)    Today, Textronics is part of adidas' Digital Sports Business Unit.  (*Id.*)  adidas launched the miCoach® garment line in 2008, relying on Textronics' technology and Textronics continued selling the NuMetrex® line from its 2005 launch to the present day.  (*Id*. at ¶¶7-8.)    Since 2008, adidas and Textronics have sold approximately $500,000 of accused or associated products worldwide.  (*Id*. at ¶23.)

### B.    GTRC and its Prior Licensee Delayed, and Ultimately Abandoned, its Rights Relevant to adidas and Textronics.

The '731 Patent issued on November 29, 2005 and was assigned to the GTRC.  (D.I. 21-1 at p. 4.)    GTRC and Athena Ventures partnered to form Sensatex, which received an exclusive license and was to commercialize products under the '731 Patent.  (*Id.* at p. 5.)

Textronics' 2005 launch of the NuMetrex® line was well-publicized and known to Sensatex and GTRC.  (Burr Dec. at ¶¶5, 10.)  Indeed, within a month of its formation, Sensatex contacted Textronics claiming ownership of relevant patents and asserting that Textronics would have a "difficult" time "launch[ing] any product that sense[d] signals from the body using conductive fibers that [did] not interfere with Sensatex's IP rights."  (*Id.* at ¶10; Ex. 3.)

Given Sensatex's threats from December 2005 to March 2007, Sensatex and Textronics engaged in discussions concerning Sensatex's allegations of patent infringement.  (*Id.* at ¶¶11-15; Exs. 4-7.)  Textronics consistently communicated to Sensatex and GTRC's counsel that Textronics' NuMetrex® line of apparel did not infringe Sensatex's patents.  (*Id.*)  Textronics sent a 34 page letter analyzing Sensatex's '731 Patent and another patent Sarvint initially asserted in this action and then withdrew.  (*Id.* at ¶13; Ex. 5.)  Twelve pages of the letter detailed why the '731 Patent did not cover Textronics' accused products.  (*Id.*)  After a short follow-up letter months later from Sensatex (*id.* at ¶14; Ex. 6), Textronics again reiterated why it did not infringe and invited Sensatex to drop the matter (*id.* at ¶15; Ex. 7).

Textronics heard nothing else about the '731 Patent.  (*Id.* at ¶17.)  In 2008, adidas acquired Textronics.  Thereafter, adidas publicly launched the Accused Products, yet Sensatex made no claim against either adidas or Textronics (*Id.* at ¶¶19-21.), presumably because Textronics had convinced Sensatex that its patents

were not infringed.  Indeed, until Sarvint filed its Complaint on January 9, 2015,

Textronics and adidas considered the matter closed.  (*Id*. at ¶21.)

## III.   APPLICABLE LEGAL STANDARDS

"A preliminary injunction is a drastic and extraordinary remedy that is not

to be routinely granted."  *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d

1319, 1324 (Fed. Cir. 2004) (quotations omitted).   To obtain a preliminary

injunction, a patentee must establish that (1) the patentee is likely to succeed on the

merits; (2) the patentee is likely to suffer irreparable harm in the absence of

preliminary relief; (3) the balance of equities tips in the patentee's favor; and (4)

that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council,*

*Inc.*, 555 U.S. 7, 20 (2008).  *See also Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d

1552, 1556 (Fed. Cir. 1994).

At the preliminary injunction stage, "because of the extraordinary nature of

the relief, the **patentee** carries the burden of showing likelihood of success on the

merits with respect to the patent's validity, enforceability, and infringement."

*Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991) (original

emphasis).  Accordingly, Plaintiff "must show, in light of the burdens that will

inhere at trial, that (1) it will likely prove infringement and (2) any challenges to

the validity and enforceability of its patent lack substantial merit."  *Anton/Bauer,*

*Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003) (quotations omitted).

Plaintiff also must establish that there is "a viable threat of serious harm which cannot be undone" because "[a] preliminary injunction will not issue simply to prevent a mere possibility of injury, even where prospective injury is great." *Cordis Corp. v. Medtronic, Inc.*, 780 F.2d 991, 996 (Fed. Cir. 1985).  In assessing alleged irreparable harm, "delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction."  *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995).  Additionally, a patentee is not entitled to any presumption of irreparable harm.  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

Indeed, where, as here, the patent relates to specific features of an accused product, the patentee must establish a "sufficiently strong causal nexus" between the alleged irreparable harm and the patented features.  *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012) ("*Apple II*").  If non-patented features drive consumer demand, then sales are not being lost due to patent infringement and this infringement is not the source of the harm.  *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) ("*Apple I*") ("Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature.").  "It is not enough for the patentee to establish some insubstantial connection between the alleged harm and the infringement and check the causal nexus requirement off the list.  The patentee

must rather show that the infringing feature drives consumer demand for the accused product." *Apple II*, at 1375 (emphasis added).

## IV.   ARGUMENT

### A.   Equitable Estoppel Precludes Plaintiff's Claim.

"[T]he three elements of equitable estoppel that must be established are:  (1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement." *Aspex Eyewear v. Clariti Eyewear,* 605 F.3d 1305, 1310 (Fed. Cir. 2010) (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc)).   A charge of infringement followed by an unreasonably long delay constitutes misleading silence.  *Id.* at 1310-14 (summarizing cases); s*ee also Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130-31 (Fed. Cir. 2013) (4.5 years of silence between original enforcement letters and subsequent demand demonstrated estoppel where alleged infringer relied on the silence, was acquired and then expanded its business).

Here, all three elements are met.[1]  Sensatex's enforcement letters could fairly be understood as threats of suit and specifically included an assertion of the '731 Patent as early as March 15, 2006.  (Burr Dec. at ¶¶11-15; Exs. 4-7.) Textronics denied infringing the '731 Patent and provided Sensatex with detailed analysis as to why the '731 Patent was not infringed.  (Burr Dec. at ¶13; Ex. 5.) While being willing to consider some business arrangement, Textronics reiterated that it did not infringe any valid claim.  (*Id.* at ¶15; Ex. 7.)  In its last written communication, Textronics expressly stated that if no business agreement were ever reached, "we trust that Sensatex will reconsider its assertions and drop this matter."  (*Id.*)

There is likewise no doubt that Textronics and adidas relied on the misleading silence and were materially prejudiced.  After the last written communication, adidas acquired Textronics and both parties substantially expanded their sales and investment activities in the business.  (*Id.* at ¶16-20, 22-24.)  Yet neither adidas nor Textronics heard from GTRC or any of its licensees concerning the '731 Patent again until Sarvint filed its Complaint.  (*Id.* at ¶18.)

---

[1] It is hornbook law that a successor in interest to a patent is bound by its predecessor's actions for purposes of laches or estoppel.  *See* 6A Donald S. Chisum, *Chisum on Patents* § 19.05[2][a][i]-[ii] (Matthew Bender).  Likewise, the adidas Defendants are entitled to rely on equitable estoppel as it is a successor-in-interest and in privity with Textronics.  *See Radio Sys.,* 709 F.3d at 1131 ("equitable estoppel applies to successors-in-interest where privity has been established.").

The prior communications and years of ensuing silence concerning the '731 Patent reasonably led adidas and Textronics to believe that no enforcement would occur. (*Id*. at ¶22.)   That adidas and Textronics relied on, and were prejudiced by, the patentee's abandonment of its claim is confirmed by (1) adidas' substantial expansion and support of the Textronics business in the ensuing 8 years and (2) the speaking invitation adidas issued to an inventor of the '731 Patent to an adidas-sponsored industry conference.  (*Id*. at ¶21-24.)

Indeed, this case is identical to *Radio Systems*, where the alleged infringer expanded its business and was acquired, after which the acquiring party incorporated the accused technology into its own products.  709 F.3d at 1130-31. Nor can the patentee's years of misleading silence be explained or excused.  For example, Sarvint alleges that from 2008 until the summer of 2012, GTRC sought to terminate its original license agreement.  (D.I. 21-1 at p. 5.)  But at no point during this time did Textronics or adidas receive any further communications from GTRC or any putative licensee thereof.  In short, equitable estoppel fully bars Plaintiff's claim of infringement.

**B.** **Plaintiff failed to establish it has a likelihood of success on the merits of its alleged infringement claim.**

Even assuming its claim is not equitably barred, Plaintiff has not met its burden of showing that it is "likely to succeed on the merits" of its infringement claims.  *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1375

(Fed. Cir. 2009) (quoting *Winter*, 555 U.S. at 20); *Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). This requires that Plaintiff submit evidence enabling the Court to engage in a two-step analysis: "[f]irst, the court determines the scope and meaning of the patent claims asserted . . . . [second,] the properly construed claims are compared to the allegedly infringing device" to determine "that every claim limitation or its equivalent be found in the accused device." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) (omission and alteration in original) (citations omitted).

Plaintiff has failed to submit evidence that would allow this Court to engage in the aforementioned two-step analysis. First, as to the "scope and meaning" of the patent claims, Plaintiff has done nothing more than assert that the "words of a claim are generally given their ordinary and customary meaning to a person of ordinary skill in the applicable art at the time of the invention." (D.I. 21-1, p. 10.) But this blanket conclusion ignores statements made during the prosecution of the '731 Patent on the particularized meaning of certain claim terms. Because Plaintiff has failed to take these particularized meanings into account, the claim charts it attached to its preliminary injunction motion in support of its infringement case fail to provide this Court with the necessary evidence to determine the "scope and meaning of the patent claim terms."

9

Second, Plaintiff's attempt to show that every claim limitation or equivalent is present in the Accused Products, which it must do to meet its burden, amounts to nothing more than attorney argument.   Although Plaintiff attempts to provide superficial gloss on its analysis through a purportedly supporting declaration from one of the inventors of the '731 Patent, the declaration adds nothing of substance to the analysis and only contains conclusory statements that "each of the elements of claim 1 is found in Textronics's accused product in the manner described in the claim chart."  (*See* D.I. 21-1, Ex. B, at ¶ 26.)

That is insufficient as a matter of law.  *Interface, Inc. v. Tandus Flooring, Inc.*, confirmed that attorney arguments in support of claim construction and an infringement claim chart are insufficient for a preliminary injunction.  No. 4:13–cv–46, 2013 WL 5945177, at *3 (N.D. Ga. Nov. 5, 2013).  But even apart from Plaintiff's failure to meet its burden, the adidas Defendants can affirmatively demonstrate (and already have demonstrated in their prior correspondence) that Plaintiff cannot succeed on the merits.

    1.    **Proper Construction of the '731 Patent:**

The '731 Patent is for a "fabric-based sensor for monitoring vital signs or other electrical impulses of a subject."  Abstract.  Figure 1 depicts the "design of the fabric-based sensor of the present invention, showing both a woven conductive patch and a knitted conductive patch."  '731 Patent at 3:26-28.  Claim 1 is the only

claim asserted and it recites at least two critical limitations that are simply not present in the adidas Defendants' Accused Products.  Claim 1 requires, first, "a knitted or woven fully-conductive fabric including one or more individually conductive fibers integrated therein" and, second, "an electrical lead for connection to a connector, the electrical lead being formed from one of the integrated individually conductive fibers."

As Textronics earlier detailed to Sarvint's predecessor-in-interest, the first "fabric-based sensor" limitation should be construed "to require a fabric-based sensor that has direct contact with the wearer's skin, is within a single layer of fabric, and does not bridge to another fabric-based sensor on or through a second layer of fabric."  (Burr Dec. at Ex. 5, p. 2.)  As Textronics also explained in the same letter, "the plain language of claim 1's 'electrical lead' limitation should be construed as having a single conductive fiber of the fabric-based sensor that acts as an electrical lead to a connector."  (*Id*. at pp. 2-3.)

These constructions flow directly from the intrinsic evidence.  The specification explains that the conductive "'fabric is directly contacted with a subject's body, eliminating the need for a backing material or adhesive.'"  (Burr Dec. at Ex. 5, n.2 (citing '731 patent at 3:43-48).)  Moreover, to obtain the '731 Patent the applicant expressly distinguished prior art—the Flick reference—the

Patent Office had cited in rejecting the claims.  (Hopkins Dec. at ¶¶3-4; Exs. 1-2.)

To overcome Flick, the patentee urged that:

> Flick discloses a wrap having a *layer* of metallized fabric made up of nylon coated with metal.  The metallized layer is surrounded by *layers* of non-conductive fabric . . . .  *The present invention, on the other hand, is comprised of a single fabric* made from individually conductive fibers and optionally with other non-conductive fibers.  *The fabric of the present invention does not consist of placing a conductive layer beneath a non-conductive layer.  Rather, it is the same single fabric.*

(Burr Dec., Ex. 5 at p. 3, n.2 (citing April 30, 2002 Amendment and response at 5); *see also* Hopkins Dec., Ex. 2.)   A January 2003 Amendment iterated that "[t]he present invention, on the other hand is comprised of a single fabric made from individual conductive fibers."  (Hopkins Dec., Ex. 3 at p. 2.)  Finally, as to the "electrical lead" phrase, the patentee expressly amended that claim term to change from its original, "open ended" claiming approach – which would have allowed more than one fiber to connect to form the lead – to specifying that only one fiber formed the lead.  (Burr Dec., Ex. 5 at n.3; Hopkins Dec., Ex. 4.)

> 2.   **The adidas Defendants' Accused Products do not infringe Claim 1 of the '731 Patent.**

As explained to Sensatex and GTRC seven years ago, Claim 1's recitation that the electrical lead is "formed from one of the integrated individually conductive fibers" is simply not present in the accused products.    (Jones Dec., ¶35.)   None of the conductive fibers in the sensor patches of the adidas Defendants' Accused Products form a lead of any type, let alone a lead that is

formed from one such conductive fiber.  (*Id.*)  For example, when Dr. Jones examined the miCoach® garment, he noted that the adidas Defendants' Accused Product uses a very different structure than the recited "electrical lead" of Claim 1. (*Id.* at ¶36.)  Further, there is not a single (or multiple) conductive thread that is part of the miCoach® product's sensor patch which also touches the connector snap.  (*Id.*)  Instead, the snaps of the miCoach® product are connected to a separate conductive fabric patch as well as the snap conductive patch and the sensor patch do not have any silver fibers in common.  (*Id.*)  In the adidas Defendants' Accused Products, the sensor patch and the conductive patch overlap one another by a small amount and are attached to one another using a nonconductive thread.  (*Id.*)

Second, Claim 1 recites a "fully-conductive fabric," however, the sensor of the adidas Defendants' Accused Products does not employ a "fully-conductive fabric."  (*Id.* at ¶40.)  Upon examination of the miCoach® garment, Dr. Jones determined that the accused sensor patch is constructed from silver yarn, ordinary black nylon, and Lycra®/spandex yarns.  (*Id.* (including Figure 1 showing the sensor patches which are meant to touch the skin of the wearer and Figure 2 showing that these sensor patches are not solely composed of the silver yarn).)  Dr. Jones tested the conductivity of the portion of the strap that does not contain the silver conductive yarn and found that it was effectively not conductive.  (*Id.*)  In contrast, Dr. Jones tested a portion of the silver patch and found that an

approximately 1 inch segment had a resistance of ~0.5 Ohms.  (*Id.*)  As such, the adidas Defendants' Accused Products include a sensor patch that has both conductive and nonconductive fibers.  (*Id.* at ¶42.)

Finally, Sarvint cannot salvage its infringement claim by resorting to the doctrine of equivalents.  Its moving papers do not even attempt to meet its burden of showing equivalency.  The amendments and arguments made before the U.S. Patent & Trademark Office to secure the '731 Patent estop Sarvint from pursuing any claim of equivalency.  (Burr Dec., Ex. 5 at pp. 5-7.)

In short, Plaintiff is unlikely to succeed in showing that the adidas Defendants' Accused Products infringe Claim 1 of the '731 Patent.

**C.      Substantial Doubt as to Validity of Claim 1 Exists and Likely Success Has Thus Not Been Shown.**

A claim is anticipated where each element of the claim is found in a single prior art reference.  *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987).  A finding of anticipation will invalidate a patent.  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1378 (Fed. Cir. 1998). The prior art reference may anticipate without using words identical to those recited in the claims.  *In re Bond,* 910 F.2d 831, 833 (Fed. Cir. 1990).  A prior art reference also may anticipate without explicitly disclosing a feature of a claimed invention if that missing feature is inherently present in the anticipating reference. *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991).

Sarvint has not claimed any invention date for the '731 Patent prior to its earliest filing date, *i.e.*, September 21, 1998.  (D.I. 19, Ex. A.)  Reinhold was filed on May 8, 1974 and issued on June 10, 1975.  Accordingly, Reinhold is prior art to the '731 Patent under 35 U.S.C. § 102(a). [2]  *See Novo Nordisk Pharm. v. Bio-Tech Gen. Corp.*, 424 F.3d 1347, 1354-55 (Fed. Cir. 2005).

The '731 Patent acknowledges that, at the time of its disclosure, "[m]any of the existing sensors are either rubberized electrodes or gel-based sensors that stick to the body of the subject [and both] types of sensors have the major drawbacks of being difficult to remove and causing skin irritation and chafing."  '731 Patent, 1:31-35.  In like fashion, Reinhold acknowledges that, at the time of its disclosure:

> The practice heretofore has been to use separate adhesively applied electrodes for purposes of respiratory and/or ECG monitoring . . . . While the use of electrodes of this type produce reliable monitoring, this reliability is obtained with the known inconvenience and aggravation experienced by adults when being so monitored. Thus, it is well known that conductive pastes or electrolyte gels are a source of skin irritation and maceration.

(Reinhold, 1:12-57.)

Reinhold responds to this problem by disclosing a system for respiratory and cardiac monitoring of infants. (Jones Dec. at ¶24; Reinhold, Fig. 1 (reproduced



*Fig.1*

---

[2] The disclosure of this prior art reference is not exhaustive and the adidas Defendants hereby reserve the right to rely upon other prior art references over the course of the present action.

herein).)   As with the '731 Patent, Reinhold discloses a disposable electrode assembly **10** that "utiliz[es] a plurality of flexible sheet form electrodes" **16**, **18**, **20**, and **22** and "the pad [**12**] and electrodes could be formed of woven or knitted material with the electrodes being provided by electrically conductive yarns." (Reinhold at 1:62-67, 4:10-24, 37-48; Jones Dec. at ¶24.)   The Reinhold system employs electrodes that are in contact with the back of an infant via the infant back receiving area **14**.  (Jones Dec. at ¶24; Reinhold at 4:10-24.)   The electrodes are in connection with snap connectors **50**, **52**, **54**, and **56** that allow for connection to monitoring equipment.  (Jones Dec. at ¶24; Reinhold at 4:56-59.)  The electrodes are connected to the snap connectors via strips **34**, **36**, **38**, and **40** that are integral with and extend from the electrodes.  (Jones Dec., ¶24; Reinhold, 4:48-51.)



Fig.3

As Dr. Jones explains, the Reinhold patent teaches each and every element of Claim 1 of the '731 Patent and renders said claim invalid as anticipated.  (Jones Dec. at ¶24)  First, Reinhold discloses a "method for monitoring the vital signs" by describing a system for respiratory and cardiac monitoring (*i.e.*, vital signs) of infants (*i.e.*, subject).  (*Id.*)   Second, Reinhold goes on to disclose "applying a fabric-based sensor to the subject" since Reinhold describes a system that includes fabric-based electrodes which are placed into contact with an infant.  (*Id.*)  Third,

Reinhold discloses "connecting the sensor to a monitor, the fabric-based sensor" because Reinhold describes having snap connectors that are designed to be connected to monitoring equipment and the snap connectors are electrically connected to the fabric-based electrodes. (*Id.*) Fourth, concerning the "knitted or woven fully-conductive fabric . . ." of Claim 1, Reinhold describes that electrodes (or sensors) can be formed via knitting or weaving of electrically conductive yarns (or conductive fibers) to form a fully-conductive fabric and the conductive yarns can be metallic coated yarns or carbon powder loaded resin, each of which is individually conductive prior to being incorporated into the fabric. (*Id.*) Fifth, regarding the "electrical lead for connection . . ." of Claim 1, Reinhold describes that electrodes are connected to the snap connectors via strips (*i.e.*, electrical lead) that are integral with and extend from the electrodes. (*Id.*) Last, Claim 1 recites a "connector connected to the electrical lead" and Reinhold describes that snap connectors are connected to the strips (or electrical leads). (*Id.*) As such, Claim 1 of the '731 Patent is anticipated because each element of the claim is found in Reinhold. (Id. at ¶25.)

**D.    Plaintiff has failed to prove it will suffer irreparable harm if this Court does not grant the present motion.**

**1.    Plaintiff's delay precludes any finding of irreparable harm.**

Even assuming the Court does not find equitable estoppel, the patentee's delay in enforcement is fatal to its claim for preliminary relief.  In assessing

alleged irreparable harm, "delay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995). Delays of several months may alone preclude finding irreparable harm. *See, e.g., In re AutoHop Litig.*, No. 12 Civ. 4155, 2013 WL 5477495, at *10 (S.D.N.Y. Oct. 1, 2013) (a six month delay "weigh[ed] against a finding of irreparable harm"); *Abbott Labs. v. Selfcare, Inc.*, 17 F. Supp. 2d 43, 50 (D. Mass. 1999) (finding a "nine-month delay" weighed against irreparable harm, and could not be excused by needing time to assess infringement and market impact where the patentee had advance notice of the allegedly infringing product).

Here, as demonstrated, there has been knowledge of adidas and Textronics' accused activity for years. That knowledge cannot be excused by Sarvint's claim that it only recently became an exclusive licensee. It is settled law that a transferee of a patent must accept the results of his transferor's slow-paced behavior. *See R2 Medical Systems, Inc. v. Katecho*, 931 F. Supp. 1397, 1412 (N.D. Ill. 1996); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997). GTRC and its chosen prior exclusive licensee knew of adidas and Textronics' activities for multiple years, but elected to forego any enforcement action for almost a decade. Moreover, the inventor of the patent-in-suit was

associated with both of those entities and Sarvint, and was likewise well aware of the accused activities.[3]

Indeed, this is an unusual case in that not only is the delay sufficient to defeat the claim for preliminary relief, it presumptively establishes laches.  Laches is measured from when the patent owner knew or should have known of the alleged infringement. A six-year delay is presumed unreasonable and, in such cases, the patentee bears the burden to provide an adequate reason for the delay and rebut the ensuing presumption of prejudice.  *See A.C. Aukerman Co.*, 960 F.2d 1020.  It is indisputable that the patentee and its licensee were aware of adidas and Textronics' prior activities for more than six years.  As a result, laches is presumed and not only would this bar any claim to equitable relief, it likewise goes far to demonstrating, as noted below, that money damages would be fully adequate, as any potential damages would only apply to activities undertaken since the filing of the complaint.

2. **Plaintiff's absence from the market confirms there is no imminent irreparable harm.**

Sarvint has utterly failed to identify any imminent, irreparable harm it has suffered.  First, Sarvint acknowledges it is not in the market.  Thus, it is not a

---

[3] Even if Sarvint could escape the legal effect of GTRC and Sensatex's delay, Sarvint has failed to provide any reason why it took multiple months to complete its agreement with GTRC and over three months to bring the instant preliminary injunction motion.  That delay alone likewise rebuts any claim of irreparable harm.

competitor.  While Sarvint talks much of the "first mover" advantage it is losing, that race was lost a decade ago when the patentee's chosen licensee was unable effectively to commercialize and chose to abandon its enforcement claim.  Indeed, by Sarvint's own admissions, the research for what is now the '731 Patent began in 1996; yet, as of today, there is still no patented product on the market.[4]

As a result, Plaintiff is unable to identify any actual loss in market share, customers, reputation, etc.  Even in situations where direct competition exists, courts routinely deny preliminary relief where there is no evidence of specific injury.  *See, e.g., Open Text, S.A. v. Box, Inc.*, No. 5:13-CV-04910, 2014 WL 1389065, at *15 (N.D. Cal. Apr. 9, 2014) (refusing to grant a preliminary injunction where Plaintiff had "not provided to the Court, with any level of specificity, what sales have been lost to Box . . .  or any evidence of actual lost customers going to Box").

Plaintiff seeks to remedy this glaring defect by speculating about what it might do in the market and how adidas and Textronics' presence might affect its as yet unexecuted plans.  Such sheer speculation is insufficient to support the drastic remedy of preliminary relief.  *In re AutoHop Litigation*, 2013 WL 5477495, at *9.

---

[4] Patentee has been asserting, through its licensees, that it would enter the market since the first communication between Sarvint and Textronics on December 17, 2005.  (Burr Dec. at ¶10; Ex. 3 (stating that the "launch [of] the commercial SmartShirt [would be] announced in the next six weeks").)

But, in addition, Plaintiff's speculations are aptly rebutted by both its own admissions and the testimony of Professor Kidder.

As to the first point, Plaintiff admits that it intends to enter commercial markets in which adidas and Textronics are not presently engaged, *e.g.*, the market for "garments for infants to help prevent Sudden Infant Death Syndrome." (*See* D.I. 21-2, p. 22.).  As such, adidas and Textronics' actions have no impact on Sarvint's ability to pursue this market.

As to the second point, Professor Kidder details why Plaintiff's speculative economic claims simply do not support the relief requested.  In short, Plaintiff inappropriately relies on an incorrect market definition, assumes a first mover advantage exists when it does not in this matter, and assumes Sarvint's plans will succeed.  (Kidder Dec. at ¶12-16)  The assumptions and opinions Plaintiff offers in lieu of hard facts simply do not demonstrate any irreparable harm here.

Nor can these defects be swept away with Plaintiff's claim that the '731 Patent will expire in September 2018.  Patentee's inexplicable and unexplained delays, abandonment of its enforcement claim, and failure in commercializing a patented product, confirm that the patentee has simply failed to diligently take advantage of the limited term of its patent monopoly.

    3. **Plaintiff has failed to show any "causal nexus" between the alleged harm and alleged infringement and failed to show inadequacy of monetary remedies.**

To succeed on its motion, Plaintiff must show more than it has lost or may lose sales or market share.  Rather, Plaintiff must show that there is a causal nexus between Plaintiff's alleged losses and the alleged infringement.  As the Federal Circuit has explained, "to satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements:  1) that absent an injunction, it will suffer irreparable harm, and 2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement."  *Apple II*, 695 F.3d at 1374 (internal citations omitted).

Plaintiff has nothing but speculative, potential losses.  But even as to such speculative losses, it has failed to show any nexus, much less a causal nexus, between its alleged losses and Defendants' allegedly infringing products – "causal nexus" is not mentioned or addressed anywhere in Plaintiff's papers.  Yet, as demonstrated, the claims here are limited to a very specific feature – a particular fabric-based sensor that has an electrical lead formed from one fiber.  Nowhere does Sarvint show that there is consumer demand for these particular, claimed features.  Thus, it cannot show its speculated market entry would be impeded in any way by the adidas Defendants' activities, even if one assumed arguendo infringement was shown.

Moreover, Sarvint does admit that adidas has relied on many other products and features to succeed in the marketplace, including the ecosystem of "smart

phone" applications and associated products that adidas has created to attract customers.  It admits that:

> . . . Adidas [sic] has developed a digital platform around its miCoach Apparel products enabling users to monitor and track performance metrics measured by the smart garment.  Specifically, "[t]he data gathered by the electrodes are transmitted through the garment to a small gadget that is snapped into a shirt or sports top (as pictured above). This, in turn, passes them wirelessly to a user's mobile phone for processing and display.

(D.I. 21-2, pp. 15-16 (citing testimony of Plaintiff's alleged expert to support this point); *see also* Burr Dec. at ¶7.)  But the '731 Patent does not cover the adidas digital platform and is instead limited to "monitoring the vital signs of a subject comprising applying a fabric-based sensor to the subject and connecting the sensor to a monitor," as claimed in the '731 Patent.  These non-patented features make the adidas Defendants successful in the market, yet Sarvint's patent rights simply do not implicate these features and thus no causal nexus can be shown.

Independently, adidas and Textronics' sales of the Accused Products have been relatively modest, which weighs against a preliminary injunction.  *Paice LLC v. Toyota Motor Corp*., 504 F.3d 1293, 1303 (Fed. Cir. 2007) (finding monetary damages were adequate where infringing product accounted for a low dollar value of sales).  Moreover, given the history of licensing, monetary damages can be reasonably calculated, which also weighs against injunctive relief.  *Altana Pharma AG v. Teva Pharm*., 532 F. Supp. 2d 666, 683 (D.N.J. 2007) ("a movant does not

establish irreparable harm . . . where money damages are calculable and the defendants have the ability to pay any damages award"), *aff'd*, 566 F.3d 999 (Fed. Cir. 2009).

Nor is there any dispute that any monetary judgment can be satisfied by the adidas Defendants.  *See* (Burr Dec. at ¶25; Ex. 8 (noting adidas Group's N2014 North American revenues).)  That is especially true given that the presumption of laches in this matter eliminates any damages claims for pre-suit sales.  In short, Plaintiff has not even tried to shoulder its required burden and has thus not demonstrated irreparable harm.

### E.    The Balance of Equities Precludes the Injunctive Relief Sought.

A preliminary injunction would have a severe impact on the adidas Defendants.  They have invested substantial time, effort and resources into the development and commercialization of the technology sold in the Accused Products.  The adidas Defendants have devoted substantial resources to evangelize and promote their technology and create a market for athletic fitness technology garments.  (Burr Dec. at ¶23.)  An injunction would severely undermine those investments and burden the retail and consumer relationships the adidas Defendants have developed and nurtured.  (*Id.* at ¶¶25-26.)

In contrast, Plaintiff contends that its research began in 1996 but it has not commercialized a single product since then.  Plaintiff also cannot identify a single

lost customer, sale or market share.  Instead, Plaintiff seeks relief from this Court on the mere speculation of harm or loss, despite having delayed pursuing its claim for over seven years.  This is simply not enough to tip the balance of equities in Plaintiff's favor.  *See In re AutoHop Litigation*, 2013 WL 5477495, at \*9; *Open Text,* 2014 WL 1389065, at \*15.

### F. The Public Interest Would be Disserved if This Court Granted Plaintiff's Request for a Preliminary Injunction.

The public interest would be disserved if an injunction is granted in view of alleged infringement of "limited non-core features" which "would have the effect of depriving the public of access to a large number of non-infringing features." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1372-73 (Fed. Cir.  2013) ("*Apple III*").  As demonstrated, an injunction, if granted by this Court, would deprive the public of more important, non-patented features associated with the adidas Defendants' Accused Products.

## V. CONCLUSION

Based on the foregoing, adidas and Textronics respectfully request that the Court deny Plaintiff's Motion for Preliminary Injunction.

*/s/ Mitchell G. Stockwell*
Mitchell G. Stockwell
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528

(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
mstockwell@kilpatricktownsend.com

Matias Ferrario
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27104

*Counsel for Textronics, Inc. and adidas
North America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of May, 2015, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following:

Peter F. Schoenthaler
3350 Riverwood Parkway, Suite 1900
Atlanta, GA  30339
Telephone:  (404) 592-5397
Facsimile:  (404) 891-6120
pfs@pfslawgroup.com

Andrew Crain
Eric G. Maurer
Thomas Horstmeyer
400 Interstate North Parkway SE, Suite 1500
Atlanta, GA  30339-5029
Telephone:  (770) 933-9500
Facsimile:  (770) 951-0933
andrew.crain@thomashorstemeyer.com
eric.maurer@thomashorstemeyer.com

_/s/ Mitchell G. Stockwell_
Mitchell G. Stockwell
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
mstockwell@kilpatricktownsend.com

_Counsel for Textronics, Inc. and adidas
North America, Inc._

27