# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| SARVINT TECHNOLOGIES, INC. | Civil Action File No.: |
| Plaintiff, | 1:15-cv-00073-TCB |
| | **CONFIDENTIAL** |
| v. | **SUBJECT TO PROTECTIVE** |
| TEXTRONICS, INC., ADIDAS NORTH AMERICA, INC. | **ORDER** |
| Defendants. | |

## DECLARATION OF STACEY BURR

1.      My name is Stacey Burr.  I am employed by adidas North America, Inc. ("adidas") as the General Manager of the Digital Sports Business Unit.  I have been employed by adidas since September 2008.  From March 2005 to September 2008, I was the Chief Executive Officer and Co-Founder of Textronics, Inc. ("Textronics").  Textronics was established in 2005 through a spin-off from Invista (formerly DuPont Textiles & Interiors).

2.      In September 2008, adidas acquired Textronics, which is now part of adidas' Digital Sports Business Unit.  Since the Fall of 2008, Textronics has been operating as a subsidiary of adidas International, Inc.

3.      I have been informed that, in the present action, Plaintiff accuses adidas and Textronics of infringing U.S. Patent No. 6,970,731, entitled "Fabric-

Based Sensor for Monitoring Vital Signs" (hereinafter "the '731 Patent") and seeks an injunction. I have been informed that the accused products are the adidas miCoach® Men's Training Shirt and garments available at http://www.textronicsinc.com/products and http://shop.numetrex.com/category/womens-heart-rate-monitoring/. I have personal knowledge of the facts stated in this Declaration and, if called as a witness, could testify competently to the matters contained herein.

## ADIDAS AND TEXTRONICS BUSINESS

4. Textronics was created to develop and sell wearable sensors for use in fitness and health monitoring while also marketing its own line of clothes for personal monitoring under the brand name of NuMetrex®.

5. In 2005, Textronics introduced the first consumer NuMetrex® garment to incorporate heart rate monitoring technology directly into the garment itself. The NuMetrex® line of apparel was Textronics' first commercialization of its smart-fabric technology. Textronics' introduction of the NuMetrex® product was well publicized. The product was named "2006 Sports Product of the Year" by the Sporting Goods Manufacturer's Association, and a variety of articles highlighted the product, several of which are attached as Exhibits 1A – 1G.

6. Textronics also received U.S. patents generally relating to its technology, including U.S. Patent Nos. 7,308,294, 7,966,052, 7,970,451 and

8,214,008, for which I am listed as a co-inventor.  The first of these patents, U.S. Patent No. 7,308,294, bears an issue date of December 11, 2007, although it was published in September 2006.

7. adidas publicly launched the miCoach® line in 2008.  A key aspect of miCoach® is the platform it provides users.  For example, the miCoach® Train and Run app uses GPS to track and map a runner's route.  miCoach® also has other features that are described in Exhibit 2.  miCoach® allows adidas to offer a platform that engages with key customers and, in our experience, helps those customers connect with and engage the adidas brand and associated products.

8. adidas also launched garments to work with the miCoach® platform. As with Textronics launch, the adidas miCoach® garments were publicly announced and received a variety of positive press and reviews. The adidas miCoach® garments as initially launched incorporated the same materials and technologies used by Textronics in the NuMetrex® line of apparel.

9. Textronics continued selling the NuMetrex® line from its 2005 launch to the present day and adidas has likewise continued to sell miCoach® garments from 2008 until the present day.

PRIOR COMMUNICATIONS CONCERNING THE '731 PATENT

10. In December 2005, on behalf of Textronics, I received an email from Robert G. Kalik, then-Chief Executive Officer of Sensatex, Inc. ("Sensatex").  A

true and correct copy of this email is attached as Exhibit 3.  Before I received this email, earlier in 2005, I had spoken with Mr. Kalik and Mr. Vikram Sharma, who had informed me generally of various patent rights owned by Sensatex.  The email itself concerned the "launch of [Textronics'] monitoring bra" and asserted that "Sensatex owns the rights to a number of patents related to the use of textiles to collect sensory information from the body" and asserted that Sensatex believed "that your product is interfering with Sensatex patent rights."  Sensatex also claimed to have been working to save the company, "launch [its] commercial SmartShirt" and other products that were allegedly going to launch in the then-near future.  Mr. Kalik stated that "[a]ll of this work will have been valueless if we allow competitors to walk all over the intellectual property rights that were the cornerstone of the investments made in Sensatex. Based on my knowledge of the products Textronics has in development, I believe it will be difficult for Textronics to launch any product that senses signals from the body using conductive fibers that does not interfere with Sensatex's IP rights."

11.     Given the language of the email, Textronics perceived Sensatex would potentially initiate enforcement proceedings concerning its patent rights.  I authorized Textronics' counsel to engage with Sensatex's counsel to address the dispute.  The parties' law firms exchanged letters, true and correct copies of which are attached as Exhibits 4-7.

12. In a January 2006 letter, Textronics' counsel memorialized Sensatex's agreement to "narrow[] down the patents to be discussed by Textronics and Sensatex" as part of these discussions. Exhibit 4. Thereafter, the parties were "to discuss Sensatex's designated patents with Georgia Tech Research Corp.'s ("GTRC") patent counsel after" Textronics completed its review.

13. In March 2006, Textronics' counsel sent a 34 page letter to Mr. Kalik of Sensatex detailing the results of counsel's review concerning U.S. Patent Nos. 6,381,482 and 6,970,731. A true and correct copy of the letter is attached as Exhibit 5.

14. In January 2007, Textronics' then-counsel received a letter from then-counsel of Sensatex expanding its analysis and allegations from the NuMetrex® sports bra to also include U.S. Pat. App. No. 11/082,240 entitled "Textile-Based Electrode" which was filed on March 16, 2005 and assigned to Textronics and published on September 21, 2006. Exhibit 6. This application led to U.S. Patent No. 7,308,294 of which I am a named co-inventor and which was assigned to Textronics.

15. In March 2007, counsel for Textronics responded with the view that Sensatex's infringement allegations were only maintained as to the '731 Patent, responded to Sensatex's points and reiterated Textronics' previous view that none of the claims of the '731 Patent were infringed by the NuMetrex® sports bra. The

letter's concluding paragraph stated that "[w]e understand that the principals are discussing the terms of a possible business agreement and/or license for potential going forward activities, but if a suitable agreement cannot be reached, we trust that Sensatex will reconsider its assertions and drop this matter."  Exhibit 7.

16. I was one of the principals involved in those business discussions with Sensatex, whose principals included Mr. Kalik and Mr. Sharma.  Textronics always maintained that none of the claims of the asserted patents, including the '731 Patent, were infringed by the NuMetrex® sports bra.  We were never able to identify any suitable business arrangements.

17. After the March 2007 letter and the business discussions referenced, I do not recall any formal written communications between Textronics and Sensatex or any other entity on behalf of GTRC concerning the '731 Patent.

18. From my perspective, Textronics' counsel's analysis of the Sensatex '731 Patent was thorough and conclusively demonstrated Textronics did not infringe any valid claims.  Indeed, I did not hear anything further from Sensatex or GTRC asserting the '731 Patent or other patent rights until this lawsuit was filed in January, 2015.

19. In 2008, as I mentioned, adidas acquired Textronics and I became employed by adidas North America, Inc. ("adidas") as the Vice President of Wearable Sports Electronics.  This acquisition was also publicly known and

promoted in various press releases and articles and, in my view, well-known to the trade.

20.     adidas had, before its acquisition of Textronics, offered other garments like the adidas-Polar Fusion, which contained sensor technology sourced from Polar.  Shortly after its acquisition of Textronics, adidas elected to offer miCoach® garments with Textronics' sensor technology that was also in the NuMetrex® line of garments.

21.     Although I did not hear anything further from Sensatex or GTRC concerning the '731 Patent after the March 2007 letter and referenced discussions, Textronics has talked with Sensatex concerning other matters since the March 2007 letter.  Yet Sensatex did not raise the issue of the '731 Patent in these later discussions.  As part of adidas' marketing and support for the accused products, adidas sponsors conferences and industry events for the smart fabric area.  Indeed, I understand the complaint in this matter was filed January 9, 2015.  I did not learn of that complaint until later in January.  In September 2014 , Sundaresan Jayaraman, who is a named inventor of the '731 Patent and whose conference bio notes his group's research has led to the "Smart Shirt," was invited to speak at an adidas sponsored-conference.  The conference is titled Smart Fabrics & Wearable Technology 2015 and is scheduled for May 11-13, 2015.  I am the Co-Chair of that conference and have input on invited speakers.  But for my belief that the patent

7

issues with GTRC and Sensatex were long closed, I would not have agreed to sponsor or extend a speaking invitation to Professor Jayaraman at the conference noted.

22. In view of the history of the discussions with Sensatex and its principals, the ensuing success Textronics had in the marketplace and adidas' acquisition of Textronics and the subsequent launch of the miCoach® products using the NuMetrex® technology, I believed that Sensatex and GTRC had elected to drop the matter and not pursue any enforcement action, as invited by Textronics' counsel. I relied on that view in operating the business thereafter.

23. In reliance on that view, adidas and Textronics have substantially expanded the sales of the accused products since the 2006 and 2007 correspondence with Sensatex and GTRC. For example, since 2008, adidas and Textronics have sold at least approximately $500,000 of accused or associated products worldwide. adidas and Textronics have also invested substantial resources in marketing and developing the NuMetrex® line of garments and the related miCoach® line of garments. I would estimate that adidas expended an average of at least about $150,000 per year since 2008 in marketing those products.

24. As explained above, adidas and Textronics have spent many years developing and promoting the accused products. Because of my belief that the matter concerning the '731 Patent had been dropped, adidas and Textronics did not

8

seek to take any further actions to engage with GTRC or Sensatex to minimize the possibility of an enforcement suit or otherwise protect our investment in this business.

25.  I understand that Sarvint is now seeking a preliminary injunction against the accused products in this matter.  I am not familiar with any current product offerings from Sarvint.  However, adidas and Textronics compete with other companies in this area and a key aspect of that competition is to persuade retailers to carry, promote and support products.  Any injunction against the accused products would significantly disrupt such existing customer relationships.  While I understand adidas and Textronics could continue to sell accused products outside the U.S., many of adidas' traditional channels of distribution are to retailers that have operations in the U.S., and managing the distribution chain to exclude the U.S. would be costly and time-consuming for both adidas and Textronics as well as their retail customers.  As an example, I include excerpts of adidas' 2014 annual report as Exhibit 8, which at pages 2-5 discusses adidas' global sales strategy and at pages 11-16 demonstrates the adidas Group's worldwide revenues and the importance of the North American market, which represented sales of roughly 2.8 billion euros in 2014.

26.  Moreover, at the consumer level, as I noted, engagement with consumers through the miCoach® platform is key to expanding the value of the

adidas brand. miCoach® customers who also purchase the accused products represent a key consumer for adidas as they typically represent consumers who are engaged with our brand. An injunction against the accused products would impair adidas' ability to continue its engagement with some of its key customers through the highly innovative miCoach® brand.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed this <u>12</u> day of May, 2015.

                                                                      Stacey Burr

                                                                      12/05/15

US2008 6867897 3

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of May, 2015, I electronically filed the DECLARATION OF STACEY BURR IN SUPPORT OF DEFENDANTS' OPPOSITION TO SARVINT TECHNOLOGIES, INC.'S MOTION FOR PRELIMINARY INJUNCTION with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Peter F. Schoenthaler
3350 Riverwood Parkway, Suite 1900
Atlanta, GA  30339
Telephone:  (404) 592-5397
Facsimile:  (404) 891-6120
pfs@pfslawgroup.com

Andrew Crain
Eric G. Maurer
Thomas Horstmeyer
400 Interstate North Parkway SE, Suite 1500
Atlanta, GA  30339-5029
Telephone:  (770) 933-9500
Facsimile:  (770) 951-0933
andrew.crain@thomashorstemeyer.com
eric.maurer@thomashorstemeyer.com

*/s/ Mitchell G. Stockwell*
Mitchell G. Stockwell
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
mstockwell@kilpatricktownsend.com

*Counsel for Textronics, Inc. and adidas North America, Inc.*