# EXHIBIT 6



January 4, 2007

**OFFER OF COMPROMISE, WITHOUT PREJUDICE
SUBJECT TO FED. R. EVID. 408**

Mr. Stephen L. Sulzer
CONNOLLY BOVE
  LODGE & HUTZ LLP
1990 M Street, NW, Suite 800
Washington, D.C. 20036

Re:   Sensatex Patents
      Our File No.: 821934-9010

Dear Mr. Sulzer:

Your letter of March 17, 2006 addressed to Robert Kalik of Sensatex has been referred to us for review and comment. We understand your letter provides your review of the independent claims of several patents brought to your attention. We further understand your review is directed to a sports bra marketed by your client, Textronics, Inc., under the trademark NuMetrex™. Your letter included as Attachment "A" a copy of a drawing labeled "Fig. 4" and four paragraphs of text entitled "Description of Fig. 4" and as Attachment "B" copies of a photograph of each of the front and of the back of a NuMetrex™ sports bra.

Since your letter, U.S. patent application Serial No. 11/082,240 entitled "Textile-Based Electrode" filed March 16, 2005 and assigned to Textronics, Inc. was published on September 21, 2006 under Publication No. 2006/0211934. A review of the Fig. 4 and associated text provided as Attachment A of your letter shows that the information of Attachment A was excerpted from this patent application, the text of Attachment A corresponding to paragraphs 0054-0057 of the published application.

In view of the above Textronics patent application, taken in its entirety, we understand the NuMetrex™ sports bra is a knitted garment (see, e.g., paragraphs 0028 and 0045) comprising a fabric-based electrode such as electrode 25 including a fabric portion 20 having non-conductive yarns and an electrically conductive region 40 having electrically conductive yarn filaments. The fabric-based electrode 25 further includes float yarns 44 that are connected electrically by a second electrode 15 to a connector 50 to which a transmitter 200 is connected for receiving signals generated by the electrode 25 and transmitting the signals generated by the electrode 25 to a monitor in the form of, for example, a wrist worn system that is designed to monitor heart rate (see, e.g., paragraph 0064). Electrode 25 comprises at least a portion of electrically conductive yarns 40 and further comprises at least at least a portion of float yarns 44. Similarly electrode 15 comprises at least a portion of electrically conductive yarns 30 and further

100 Galleria Pkwy NW Ste. 1750, Atlanta, GA 30339
phone: 770.933.9500  fax: 770.951.0933  tkhr.com

Thomas, Kayden, Horstemeyer & Risley, LLP  Intellectual Property Lawyers

January 4, 2007
Page 2

comprises at least a portion of float yarns 34. Float yarns, or floats, comprise a portion of yarn that extends over the fabric without being knitted in. See, e.g., paragraphs 0031 and 36. Electrically conductive yarns 30, 40 are floated over the structure of the fabric facilitating electrical contact between the conductive yarn portions of the electrodes of the fabric through the physical contact of the float yarns. The electrical contact between the conductive yarn portions of the electrodes can be further facilitated by stitching conductive float yarns 34, 44 together. See, e.g., paragraph 0036. The electrically conductive yarns are individually conductive prior to incorporation into the fabric in the absence of conductivity imparted to the fabric or to the yarns after incorporation into the fabric (see, e.g., paragraph 0038). As a result of the contact between float yarns 34, 44, an electrical signal can pass in either direction from electrode 15 (comprising electrically conductive yarns 30) on the outer surface of the garment to electrode 25 (comprising electrically conductive yarns 40) on the inner surface of the garment and thereon to the skin of the wearer (see, e.g., paragraph 0046). Based on the information represented in your letter, subject to confirmation, we understand the NuMetrex™ sports bra does not include, for example, individually insulated conductive fibers.

In view of Textronics' aforementioned pending patent application entitled "Textile-Based Electrode" and your representation that the NuMetrex™ sports bra does not include one or more individually insulated conductive fibers, we will direct the discussion in this letter to U.S. Patent No. 6,970,731 ("the '731 patent"). We reserve the right to address one or more of the other patents reviewed in your letter in the future should more information concerning your client's products come to our attention. We have refrained from presenting legal citations in this letter on the assumption that you, too, are familiar with the law. We additionally reserve the right to present legal authority, if necessary, in the future.

We respectfully disagree with the analysis presented in your letter in connection with at least Claim 1 of the '731 patent. Based on our review of the '731 patent, its prosecution history and the analysis provided in your letter, we are of the view that Claim 1 literally reads on the NuMetrex™ sports bra as exemplified by the complete text of Textronics' patent application. As described above, the NuMetrex™ sports bra provides a method for monitoring the vital signs (for example, heart rate) of a subject comprising applying a fabric-based sensor (for example, electrode 25) to the subject and connecting the sensor to a monitor (for example, the wrist worn system), the fabric-based sensor comprising a knitted or woven (see, e.g., paragraph 0035; additionally, the NuMetrex web site refers to "sensors woven into the bra") fully-conductive fabric (for example, the electrical signal can pass from the skin of the wearer to the transmitter 200 to the wrist-based monitor) including one or more individually conductive fibers (the electrically conductive yarns 40) integrated therein by the process of knitting or weaving the fabric, each conductive fiber being individually conductive prior to being incorporation into the fabric in the absence of conductivity imparted to the fabric or to the fibers after incorporation into the fabric (see, e.g., paragraph 0038), and an electrical lead (for example, float yarn 44 of electrode 25) for connection to a connector (see, e.g., snap-engaged contact 50, paragraph 0060), the electrical lead being formed from one of the integrated individually conductive fibers (each float yarn 44), and a connector connected to the electrical lead (contact 50 connected to float yarn 44 by way of electrode 15 and its float yarn 34).

January 4, 2007
Page 3

We understand the analysis of your letter to conclude that Claim 1 does not literally read on the NuMetrex™ sports bra for four reasons: first, that the electrodes of the NuMetrex™ sports bra are not within a single layer of fabric; second, all of the electrodes on the NuMetrex™ sports bra do not come in contact with the wearer's skin; third, conductivity in the NuMetrex™ sports bra sensors is bridged from a first pair of fabric-based electrodes to a second pair of fabric-based electrodes; and fourth, that the NuMetrex™ sports bra does not have a single conductive fiber of the fabric-based sensor that acts as an electrical lead to a connector. No other reasons are provided in your letter.

In our opinion none of the four reasons provides a legitimate basis for claiming that Claim 1 of the '731 patent does not literally read on the NuMetrex™ sports bra. Each of the four reasons is addressed below.

Regarding the first reason of your letter, Claim 1 of the '731 patent does not recite that its fabric-based electrode is within a single layer of fabric and, thus, there is no such limitation included in the claim. Even if the claim were interpreted to require a fabric-based sensor within a single layer of fabric, electrode 25 comprised of conductive yarns 40 of the NuMetrex™ sports bra is within a single layer 70 of fabric (see, e.g., Figs. 2A, 3A and 3C of your client's patent application, that were not included with your letter). Further, unlike the Flick reference, the NuMetrex™ sports bra does not consist of placing a conductive layer beneath a non-conductive layer. If it did, there would be no electrical connection between electrode 25 and transmitter 200.

Regarding the second reason of your letter, Claim 1 of the '731 patent also does not recite that every electrode/sensor must contact the skin of the wearer. It only recites applying a (meaning at least one) fabric-based sensor to the subject. This recitation is met by electrode 25 that is applied to the skin of the wearer (see, e.g., paragraph 0026). This recitation does not preclude the presence of other electrodes that either do or do not contact the skin of the wearer. Further, it is notable that the second electrode 15 of the NuMetrex™ sports bra serves no specific functionality other than to serve as an electrical contact between the float yarns 44 of sensor electrode 25 and connector 50. Otherwise, there would be no electrical connection between sensor electrode 25 in contact with the skin of the wearer and contact 50 and ultimately to transmitter 200.

The third and fourth reasons are based on a misreading and misapplication of the prosecution history of the '731 patent. The issue of "bridging" presented as the third reason is unrelated to any element of Claim 1 of the '731 patent and, thus, fails to support the argument presented. This argument is based on an amendment and response dated April 30, 2002 in the prosecution history of the '731 patent. The amendment to Claim 1 made in that amendment and response involved changing the phrase "integrated fully-conductive fibers" to "integrated individually conductive fibers." This is not a point of distinction between the invention of the Claim 1 of the '731 patent and your client's NuMetrex™ sports bra which has integrated individually conductive fibers 30, 40. This argument is further based on the Flick patent (US 5,374,283) addressed in that amendment and response. The Flick patent, however, has a different construction and mode of operation than that of both the NuMetrex™ sports bra and the

January 4, 2007
Page 4

invention of Claim 1 of the '731 patent. The Flick patent relates to an electrical therapeutic apparatus that delivers electric shock pulses to control pain, stimulate the muscles, and treat edema and inflammation in the human body. As illustrated in Figs. 1-3 Flick teaches the use of at least two spaced apart electrodes, that do not have integrated individually conductive fibers, with an electrical supply (13) connected to one of the electrodes and an electrical return (15) connected to another one of the electrodes. This is not the construction or mode of operation of the NuMetrex$^{TM}$ sports bra or the invention of Claim 1 of the '731 patent.

The fourth reason is directed to the issue of an electrical lead being formed from one of the integrated individually conductive fibers and based on an amendment and response dated December 18, 2003 in the prosecution history of the '731 patent. Again this is not a point of distinction between the NuMetrex$^{TM}$ sports bra and the invention of Claim 1 of the '731 patent. Each float yarn 44, 44' of the NuMetrex$^{TM}$ sports bra is formed from one of the integrated individually conductive fibers 40, 40'. This element of Claim 1 does not preclude that the electrical lead is also formed of another one of the integrated individually conductive fibers. Moreover, the clarification of this element requested by the US Patent and Trademark Office was not based on a concern over whether this element was taught in any of the cited references.

In view of the foregoing, we strongly disagree with the conclusion in your letter. In our opinion, at least claim 1 of the '731 patent literally reads on your client's NuMetrex$^{TM}$ sports bra. I understand that Sensatex is willing to license, or sublicense, the patents in question. I recommend that the parties get together to try to work out a mutually acceptable license.

Sincerely,

Todd Deveau
todd.deveau@tkhr.comTD/lad

TD/ld
cc: Robert G. Kalik