# EXHIBIT 7



# CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

1990 M Street, NW, Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

STEPHEN L. SULZER
PARTNER

DIRECT: (202) 572-0324
FAX: (202) 293-6229
E-MAIL: ssulzer@cblh.com
REPLY TO: Washington DC Office

Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles CA 90071
TEL (213) 787 2500
FAX (213) 687 0498

March 13, 2007

WEB www.cblh.com

*OFFER OF COMPROMISE, WITHOUT PREJUDICE*
*SUBJECT TO FED. R. EVID. 408*

**VIA FEDERAL EXPRESS**

Todd Deveau, Esq.
Thomas, Kayden, Horstemeyer & Risley, LLP
100 Galleria Pkway NW, Suite 1750
Atlanta, GA 30339

Re:   U.S. Patent No. 6,970,731 B1

Dear Mr. Deveau:

We have reviewed your January 4, 2007 letter to me setting forth Textronics' response to my March 17, 2006 letter to Robert Kalik. In my March 17, 2006 letter, I showed that Textronics' NuMetrex™ sportsbra does not infringe any of Sensatex's U.S. Patent Nos. 6,970,731 B1 ("the '731 patent"), 6,381,482 B1 ("the '482 patent"), 6,145,551 ("the '551 patent"), 6,474,367 B1 ("the '367 patent"), or 6,941,775 B2 ("the '775 patent"). We understand now that Sensatex maintains its infringement allegations only as to the '731 patent and has dropped its infringement allegations as to the other patents.

As I pointed out in my March 17, 2006 letter, none of the '731 patent claims is infringed by the NuMetrex™ sportsbra, either literally or under the doctrine of equivalents, because, *inter alia*, the fabric-based sensor of the accused NuMetrex™ sports bra is not within a single layer of fabric, and bridges to another fabric-based sensor on or through a second layer of fabric. The accused NuMetrex™ sports bra thereby does not meet claim 1's "fabric-based sensor" limitation when that limitation is properly construed -- as it must be -- in light of the '731 patent's specification and prosecution history. In addition, the fabric-based sensor's "electrical lead" limitation, when construed in light of the prosecution history, is not met by the accused NuMetrex™ sportsbra, because the accused bra does not have just a single conductive fiber in

Todd Deveau, Esq.
March 13, 2007
Page 2

the fabric-based sensor that acts as an electrical lead to a connector. Each of these three grounds is sufficient, taken alone, to preclude a finding of infringement.

As I understand your January 4 letter, Sensatex still contends that the NuMetrex™ sports bra literally infringes independent claim 1 of the '731 patent, but does not dispute that the other two independent claims of the '731 patent – *i.e.*, claims 7 and 17 – are not infringed, and does not dispute that claim 1 is not infringed under the doctrine of equivalents. Sensatex's infringement contention for claim 1 is premised upon a claim construction which (1) cannot be supported under well-settled principles of claim interpretation, and (2) ignores or misconstrues unequivocal disavowals of claims scope in the '731 prosecution history. For this reason, we disagree with your analysis and firmly reiterate that the '731 patent is **not** infringed by the accused NuMetrex™ sports bra.

Claim 1's "fabric-based sensor" limitation, when read in light of the intrinsic record, and particularly when read in light of the '731 prosecution history, properly is construed to require a fabric-based sensor that (1) is within a single layer of fabric and (2) does not bridge to another fabric-based sensor on or through a second layer of fabric.[1] This can be seen from the '731 patent specification, which describes the fabric-based sensor as follows: "The sensor is made from knitted or woven non-insulated, conductive fabric attached to a data-output terminal, for example a snap connector. . . . The fabric is directly contacted with a subject's body, eliminating the need for a backing material or adhesive." ('731 patent at col. 3, ll. 43-48.) That this claim must be construed as having only a single layer of fabric is even more clearly seen from the prosecution history, in an April 30, 2002 amendment and response, which attempts to distinguish the prior art Flick patent by stating:

> Flick discloses a wrap having a *layer* of metallized fabric made up of nylon coated with metal. The metallized layer is surrounded by *layers* of non-conductive fabric . . . . ***The present invention, on the other hand, is comprised of a single fabric*** *made from individually conductive fibers and optionally with other non-conductive fibers.* ***The fabric of the present invention does not consist of placing a conductive layer beneath a non-conductive layer. Rather, it is the same single fabric.***

---

[1]   As noted in my March 17, 2006 letter, the fabric-based sensor limitation, when read in light of the '731 specification and prosecution history, also should be construed to require that the sensor have direct contact with the wearer's skin. While we maintain that point, we have not focused on it again here, because the accused fabric-based sensor so clearly lacks the other features of the claimed sensor described in the text above.

Todd Deveau, Esq.
March 13, 2007
Page 3

(April 30, 2002 amendment and response at 5 (emphasis added).) It is also seen in a January 23, 2003 amendment and response, in which the applicants again sought to distinguish Flick by arguing that "[t]he present invention, on the other hand, is comprised of a single fabric made from individual conductive fibers." (*Id.* at 1-2.)

In your January 4 letter, you argue that because claim 1 does not recite that its fabric-based electrode is within a single layer of fabric, there is no such limitation in the claim. This misguided assertion ignores the well-settled doctrine of prosecution history disclaimer, by which an applicant's statements made during prosecution to distinguish the prior art serve to limit the interpretation of claims and exclude any subject matter that was disclaimed or disavowed to obtain allowance. *E.g., Omega Eng., Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-24 (Fed. Cir. 2003); *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985). It is beyond dispute that the applicants' arguments distinguished the Flick reference on the ground that the claimed fabric-based sensor comprised a single layer, and therefore cannot encompass the accused NuMetrex™ sensor, which comprises two separate layers.

You have referred us to Figures 2A, 3A, and 3C of Textronics' patent application (Pub. No. US 2006/0211934 A1). Let me refer you to the commercially available product – Textronics' NuMetrex™ sports bra. The accused NuMetrex™ sports bra has two fabric layers, each with its own separate float, which together comprise the fabric-based sensor.

You also seem to be arguing that Sensatex can avoid the limiting effects of the applicants' statements distinguishing Flick, because the accused fabric-based sensor offered by Textronics does not have a nonconductive layer as seen in Flick. Whether the accused fabric-based sensor has a nonconductive layer as in the Flick reference is completely immaterial to proper construction of the "fabric-based sensor" limitation in claim 1 of the '731 patent. The '731 patent claim is construed based on the intrinsic record, *i.e.*, the '731 patent specification and prosecution history. Faced with the Flick reference, the applicants chose to broadly disclaim coverage of anything other than a single layer arrangement, and the Federal Circuit has now made clear that an applicant is held to the full breadth of its disclaimer, even if it was broader than necessary to obtain allowance. *E.g., Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999). These cases leave no room for your argument that claim 1 can still be construed to cover the two-layer arrangement of the accused fabric-based sensor.

The applicants also argued during the '731 prosecution, broadly and unequivocally, that their invention does not involve bridging electrodes through separate pieces of fabric: "[In Flick,] electrodes 81 and 82 are bridged through fabric 83. . . . Flick requires this combination in order for the invention to work. On the other hand, the sensor of the present invention may be used independently. (April 30, 2002 amendment and response at 5.) You question the effect of this disclaimer with the same misguided arguments you make as to the disavowal of more than a

single layer of fabric – *i.e.*, that there is no bridging limitation in the claim, and that the accused product is not like the Flick reference distinguished by the applicants. As with the applicants' layer-related disclaimer, the courts will hold the applicants to the full scope of their "no bridging" disclaimer in interpreting claim 1, regardless of whether the disclaimer was broader than necessary to obtain allowance. *E.g., Norian*, 432 F.3d at 1361-62; *Elkay Mfg.*, 192 F.3d at 979. Thus, claim 1 cannot be construed to literally encompass a fabric-based sensor that bridges through two separate pieces of fabric, as does the sensor of the accused NuMetrex™ sports bra.

With regard to the "electrical lead" limitation in claim 1, its plain language can only be understood as requiring that it be formed from a single conductive fiber that acts as an electrical lead to a connector. Moreover, as I pointed out in my March 17, 2006 letter, this construction is incontrovertible in light of the '731 prosecution history. In response to a Section 112 rejection, the applicants amended claim 1 to more clearly recite that only one of the integrated conductive fibers of the fabric-based sensor forms the electrical lead:

> (b)   an electrical lead for connection to a connector, the electrical lead <u>being</u>
> <u>formed from</u> ~~comprising~~ one of the integrated individually conductive fibers; . . .

(December 18, 2003 amendment and response at 3.) This amendment makes clear beyond any genuine dispute that the "electrical lead" limitation should be construed as having only a single conductive fiber of the fabric-based sensor which acts as an electrical lead to a connector.

Your attempt to sidestep this narrowing amendment also runs afoul of black letter principles of patent law. Even though this narrowing amendment was not made to distinguish prior art, the Supreme Court has made clear that an applicant cannot claim coverage of disavowed subject matter where, as here, a narrowing amendment is unquestionably made for reasons of patentability – here, under Section 112. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 735-37 (2002). As can be seen from visual inspection of the NuMetrex™ sports bra, the float yarn of the accused Textronics fabric-based sensor is formed from numerous separate conductive fibers, not a single fiber as required by the amended claim.

At bottom, the "fabric-based sensor" and "electrical lead" limitations of claim 1 must be construed in a manner consistent with the controlling Supreme Court and Federal Circuit authorities, and consistent with the unequivocal disavowals of subject matter made by the applicants to obtain allowance of the claim. When this is done, the scope of these limitations is exactly as described in my March 17, 2006 letter, and not as you would like it to be your January 4 letter. The NuMetrex™ sportsbra does not literally infringe claim 1 of the '731 patent, because the NuMetrex™ sportsbra does not meet claim 1's requirements that the fabric-based sensor: (1) be within a single layer of fabric, and (2) not bridge conductivity to another fabric-based sensor on or through a second layer of fabric. In addition, the NuMetrex™ sportsbra does not

Todd Deveau, Esq.
March 13, 2007
Page 5

literally infringe claim 1, because the NuMetrex™ sportsbra does not meet claim 1's requirement that a single conductive fiber form the electrical lead to a connector.

There is nothing in your January 4 letter that raises a genuine issue of infringement of claim 1 of the '731 patent. We have shown that at least three claim limitations are not met by the accused NuMetrex™ sports bra. Moreover, as we have demonstrated above and in my March 17, 2006 letter, Textronics has no infringement liability with respect to its existing products under any of the five patents originally asserted by Sensatex against Textronics.

We note your offer to license or sub-license all five of these patents, which is rather mystifying, inasmuch as Sensatex has withdrawn its infringement allegations as to four of the five patents. Textronics does not see any reasonable basis on which Sensatex can claim that Textronics needs a license under all five of these patents, and we do not believe that any license is necessary regarding the NuMetrex™ clothing line.

We understand that the principals are discussing the terms of a possible business arrangement and/or license for potential going forward activities, but if a suitable agreement cannot be reached, we trust that Sensatex will reconsider its assertions and drop this matter.

Very truly yours,

Stephen L. Sulzer

cc: Stacey B. Burr