# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SARVINT TECHNOLOGIES, INC.

          Plaintiff,

Civil Action File No.:
1:15-cv-00073-TCB

**JURY TRIAL DEMANDED**

v.

TEXTRONICS, INC., ADIDAS NORTH
AMERICA, INC.

          Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF THE
## MOTION FOR SUMMARY JUDGMENT THAT EQUITABLE ESTOPPEL
## AND/OR LACHES BARS PLAINTIFF'S CLAIMS

# **TABLE OF CONTENTS**

TABLE OF ABBREVIATIONS ............................................................ iii

I.     INTRODUCTION ..................................................................4

II.    FACTUAL BACKGROUND ....................................................5

       A.     adidas and Textronics Launch of Accused Products: ...............................5

       B.     GTRC and its Prior Licensee Delayed, and Ultimately Abandoned, its Rights
              Relevant to adidas and Textronics ...........................................6

III.   APPLICABLE LEGAL STANDARDS ........................................8

IV.    ARGUMENT .......................................................................9

       A.     As a Matter of Law, Equitable Estoppel Bars Plaintiff's Claim............................9

              1.     The Patentee's Misleading Conduct Led the adidas Defendants
                     Reasonably to Believe No Enforcement Action Would be Pursued..........10

              2.     The adidas Defendants Relied on the Patentee's Misleading Conduct......13

              3.     Due to their Reliance, the adidas Defendants Would Suffer Material
                     Prejudice if Plaintiff Were Allowed to Proceed ........................................15

       B.     Laches Bars Plaintiff's Claim for Pre-Suit Damages ...........................................17

              1.     The Patentee Unreasonably Delayed Bringing Suit Against the adidas
                     Defendants ...............................................................................17

              2.     Prejudice is Both Legally Presumed and Established by the Undisputed
                     Material Facts............................................................................18

              3.     No Legally Cognizable Excuses Justify the Patentee's Delay..................19

V.     CONCLUSION...................................................................20

US2008 7086179 1

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
    960 F.2d 1020 (Fed. Cir. 1992) ............................................................ passim

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986).............................................................................8

*Aspex Eyewear v. Clariti Eyewear,*
    605 F.3d 1305 (Fed. Cir. 2010) ........................................................... passim

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).........................................................................8, 9

*Legget v. Standard Oil Co.,*
    149 U.S. 287 (1893).........................................................................19

*Radio Sys. Corp. v. Lalor,*
    709 F.3d 1124 (Fed. Cir. 2013) ........................................................... passim

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC,*
    767 F.3d 1339 (Fed. Cir. 2014) ..................................................................17

*Velten v. Regis B. Lippert, Intercat, Inc.,*
    985 F.2d 1515 (11th Cir. 1993) ..................................................................9

*Wanlass v. Gen. Elec. Co.,*
    148 F.3d 1334 (Fed. Cir. 1998) ..................................................................17

**Other Authorities**

Fed. R. Civ. P. 56(b) ...................................................................................8

Fed. R. Civ. P. 56(e)...................................................................................9

Fed. R. Evid. 301 ......................................................................................17

**Rules**

6A Donald S. Chisum,
    *Chisum on Patents* § 19.05[2][a][ii]
    (Matthew Bender).............................................................................13

## <u>TABLE OF ABBREVIATIONS</u>

| Name | Abbreviation |
|------|--------------|
| adidas North America, Inc. | adidas |
| adidas Defendants | adidas and Textronics |
| Declaration of Stacey Burr (D.I. 34) | Burr Dec. |
| Declaration of Lindsay Hopkins | Hopkins Dec. |
| Georgia Tech Research Corporation | GTRC |
| Sarvint Technologies, Inc. | Sarvint |
| Sensatex Inc. | Sensatex |
| Statement of Material Facts | SMF |
| Textronics, Inc. | Textronics |
| U.S. Patent No. 6,970,731 (D.I. 1-2) | '731 Patent |

## I.    INTRODUCTION

The adidas Defendants move for summary judgment that (1) equitable estoppel bars Plaintiff's pursuit of this action and, in the alternative, (2) Plaintiff's claims for pre-suit damages are, at minimum, barred by laches.

Plaintiff is legally bound by the actions, and inactions, of its predecessors in interest, here GTRC and Sensatex. Sensatex, GTRC's then exclusive licensee, contacted Textronics in 2006 to assert the '713 Patent, amongst others, against the same sensor technology Plaintiff accuses in this suit. The undisputed correspondence establishes that Plaintiff's predecessor was aware of the accused technology, but elected to abandon its pursuit of an infringement claim based on the detailed recitation Textronics provided of the reasons why the '713 Patent was not infringed.

The ensuing almost eight years of silence and inaction after Textronics informed Plaintiff's predecessor that Textronics would view the matter as dropped confirms the adidas Defendants were reasonable in relying on Plaintiff's predecessors' inaction. adidas, as Textronics' parent company, acquired Textronics shortly after that correspondence and adidas was likewise reasonable in relying on the patentee's misleading silence and inaction. During the ensuing seven years of silence and inaction, the adidas Defendants relied on their belief the matter was dropped in substantially investing in and expanding their business. As

4

a result, the adidas Defendants would suffer substantial prejudice were Plaintiff allowed to pursue its claim.  Accordingly, summary judgment of equitable estoppel is appropriate.

Even if, however, estoppel is not found as a matter of law, laches is established.  The over six year delay in enforcement is presumptively unreasonable.  Prejudice to the adidas Defendants is, as a result, presumed as a matter of law and, independently, established by the undisputed material facts. Thus, at minimum, summary judgment of laches is appropriate.

## II.   FACTUAL BACKGROUND

### A.   adidas and Textronics Launch of Accused Products:

In 2005, Textronics "was created to develop and sell wearable sensors for use in fitness and health monitoring while also marketing its own line of clothes for personal monitoring under the brand name of NuMetrex®." (Burr Dec. at ¶ 4-5.)[1]  Textronics viewed sportswear as an entry point and its first product was a sports bra sold under the NuMetrex® brand, intended to replace then-used chest straps.  (*Id*.)  The accused NuMetrex® line of apparel was Textronics' first commercialization of its smart-fabric technology.  (*Id.*)

adidas acquired Textronics in September 2008.  (Burr Dec. at ¶ 2; SMF at ¶ 14.)  Today, Textronics is part of adidas' Digital Sports Business Unit.  (*Id.*)

---

[1] Ms. Burr's declaration is of record at D.I. 34.  Likewise, the majority of other materials relied on herein and in the SMF are of record already in connection with the briefing concerning Plaintiff's request for preliminary relief. GTRC's 2008 public financial statement is being filed contemporaneously herewith.

US2008 7086179 1

adidas launched the miCoach® garment line in 2008 (Burr Dec. at ¶ 7; SMF at ¶ 16), incorporating the sensors and technology of Textronics' NuMetrex® line of products into adidas' miCoach® line of wearable products.  (Burr Dec. at ¶ 20; SMF at ¶ 17), Textronics has, likewise, continued to sell the NuMetrex® line of apparel from its 2005 launch to the present day.  (Burr Dec. at ¶ 9; SMF at ¶ 15.) Since 2008, adidas and Textronics have invested hundreds of thousands of dollars in their accused business (Burr Dec. at ¶ 23; SMF at ¶ 31) and sold hundreds of thousands of dollars worth of accused or associated products worldwide.  (Burr Dec. at ¶ 23; SMF at ¶ 30.)

**B.    GTRC and its Prior Licensee Delayed, and Ultimately Abandoned, its Rights Relevant to adidas and Textronics.**

The '731 Patent issued on November 29, 2005 and was assigned to GTRC. (D.I. 21-2 at p. 2; SMF at ¶¶ 4-5.)  GTRC exclusively licensed the patent to Athena Ventures, which in turn formed Sensatex, which received an exclusive license and was to commercialize products under the '731 Patent, although it failed to do so successfully.  (D.I. 21-2 at p. 2; SMF at ¶¶ 6-7.)

Textronics' 2005 launch of the NuMetrex® line was well-publicized and known to Sensatex and GTRC.  (Burr Dec. at ¶¶ 5, 10; SMF at ¶ 13.)  Indeed, within a month of its formation, Sensatex contacted Textronics claiming ownership of relevant patents and asserting that Textronics would have a "difficult" time "launch[ing] any product that sense[d] signals from the body using conductive

6

fibers that [did] not interfere with Sensatex's IP rights."  (Burr Dec. at ¶ 10 & Ex. 3; SMF at ¶ 19.)

Given Sensatex's threats from December 2005 to March 2007, Textronics perceived Sensatex was threatening to initiate enforcement (Burr Dec. at ¶ 11; SMF at ¶ 20) and engaged in discussions concerning Sensatex's allegations of patent infringement.   (Burr Dec. at ¶¶ 11-15 & Exs. 4-7; SMF at ¶¶ 20-24.) Textronics consistently communicated to Sensatex and GTRC's counsel that Textronics' NuMetrex® line of apparel did not infringe Sensatex's patents.  (*Id.*) Textronics sent a 34 page letter analyzing Sensatex's '731 Patent and another patent Sarvint initially asserted in this action and then withdrew.  (Burr Dec. at ¶ 13 & Ex. 5; SMF at ¶ 22.)  Twelve pages of the letter detailed why the '731 Patent did not cover Textronics' accused products.  (*Id.*)  Months later Sensatex sent another follow-up later (Burr Dec. at ¶ 14 & Ex. 6; SMF at ¶ 23), to which Textronics responded by again reiterating why it did not infringe and invited Sensatex to drop the matter (Burr Dec. at ¶ 15 & Ex. 7, pp. 1-5; SMF at ¶ 24).

Textronics heard nothing else about the '731 Patent until this lawsuit.  (Burr Dec. at ¶¶ 17-18; SMF at ¶ 27.)  Yet, in 2008, adidas acquired Textronics.  (SMF at ¶ 14.)  Thereafter, adidas publicly launched the accused miCoach® products (*id*. at ¶ 16), yet Sensatex made no claim against either adidas or Textronics (*id*. at ¶ 27), presumably because Textronics had convinced Sensatex that its patents were not

7

infringed.  Indeed, until Sarvint filed its Complaint on January 9, 2015, Textronics and adidas considered the matter closed.  (Burr Dec. at ¶¶ 17-18; SMF at ¶¶ 25, 27.)  As a result, the adidas Defendants relied on their belief that the matter had been dropped and proceeded to invest in their new relationship and in expanding their business and the sale of accused products.  (Burr Dec. at ¶¶ 21-24; SMF at ¶¶ 29-32.)

## III.   APPLICABLE LEGAL STANDARDS

Under Rule 56(b) of the Federal Rules of Civil Procedure, summary judgment is proper where no genuine issue of fact remains to be decided and the moving party is entitled to judgment as a matter of law.  The longstanding precedent establishes that there is no material issue of fact for trial unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Additionally, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Id.* at 249-250 (citations omitted).

The moving party bears the initial burden to inform the Court of the basis for its motion and identify the portions of the record that demonstrate the absence of a material issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After which, the non-moving party must go beyond the pleadings and by affidavits, depositions, or otherwise, designate facts that show there is a genuine issue for

trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Velten v. Regis B. Lippert, Intercat, Inc.*, 985 F.2d 1515, 1523 (11th Cir. 1993).

"[T]he applicability of equitable estoppel is 'committed to the sound discretion of the trial judge.'"  *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013).  Both equitable estoppel and laches are issues that are amenable to summary judgment.  *See, e.g., id*. at 1130-31 (affirming summary judgment of equitable estoppel as to one of the patents in suit).  A finding of equitable estoppel serves as a complete bar to a patentee's infringement claim.  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1041 (Fed. Cir. 1992) (*en banc*).  By contrast, laches bars retrospective relief for damages accrued prior to filing suit but does not bar prospective relief.  *Id.* at 1041.

## IV.   ARGUMENT

### A.   As a Matter of Law, Equitable Estoppel Bars Plaintiff's Claim.

"[T]he three elements of equitable estoppel that must be established are:  (1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement."  *Aspex Eyewear v. Clariti Eyewear,* 605 F.3d 1305, 1310 (Fed. Cir. 2010) (citing *Aukerman,* 960 F.2d at 1028).  As

US2008 7086179 1

demonstrated below, the undisputed material facts demonstrate that all three

elements are met.

> **1.     The Patentee's Misleading Conduct Led the adidas Defendants Reasonably to Believe No Enforcement Action Would be Pursued.**

A charge of infringement followed by an unreasonably long delay and

inaction may constitute misleading silence.  *Aspex Eyewear,* 605 F.3d at 1310-14

(summarizing cases); *see also Radio Sys.,* 709 F.3d at 1130-31.  *Aukerman*

explained this point:

> The first element of equitable estoppel concerns the statements or conduct of the patentee which must "communicate something in a misleading way." The "something" … is that the accused infringer will not be disturbed by the plaintiff patentee in the activities in which the former is currently engaged. The patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer. It is clear, thus, that for equitable estoppel the alleged infringer cannot be unaware—as is possible under laches—of the patentee and/or its patent. The alleged infringer also must know or reasonably be able to infer that the patentee has known of the former's activities for some time. In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years. … There is ample subsequent precedent that equitable estoppel may arise where, coupled with other factors, a patentee's "misleading conduct" is essentially misleading ***inaction***.

960 F.2d at 1042 (emphasis original; citations omitted).

*Radio Systems* provides a good example of the application of this point.  In

*Radio Systems*, the Federal Circuit affirmed a summary finding of estoppel where

"[t]he district court found that Bumper Boy [the patentee] unquestionably misled

Innotek through its 2005 demand letter and subsequent silence for over four and a half years." 709 F.3d at 1131. Factually, the patentee had sent a February 2004 letter to the alleged infringer "stating that Innotek's UltraSmart collar infringed the '014 patent and that Innotek must take a license or cease all manufacturing and destroy all sales inventory." *Id*. at 1126. Thereafter, Innotek responded in April 2005 by contending that certain prior art invalidated the patent, after which the patentee "took no subsequent action for over four years." *Id*. During that time, the alleged infringer, Innotek, "continued making and selling the" accused and similar products and was acquired by Radio Systems in September, 2006. *Id*. The patentee subsequently sent another demand letter to Radio Systems in November, 2009, prompting Radio Systems to bring a declaratory judgment action in May, 2010. These facts formed the basis of the district court's finding of misleading silence, and the subsequent affirmance of summary judgment.

Here, as in *Radio Systems*, Sensatex's enforcement letters were threats of suit and specifically included an assertion of the '731 Patent as early as March 15, 2006. (Burr Dec. at ¶¶ 11-15 & Exs. 4-7; SMF at ¶¶ 20-24.) *Compare Aspex Eyewear,* 605 F.3d at 1311 ("Aspex's letters to Clariti of March 7 and 10, 2003 can fairly be understood as threats of suit for infringement, for Aspex stated its 'understanding that some of the products sold by you may be covered by the claims of the above mentioned patents'"). Textronics denied infringing the '731

Patent and provided Sensatex with detailed analysis as to why the '731 Patent was not infringed. (Burr Dec. at Exs. 5, 7; SMF at ¶¶ 22, 24.) While being willing to consider some business arrangement, Textronics reiterated that it did not infringe any valid claim. (Burr Dec. at ¶ 15 & Ex. 7; SMF at ¶ 24.) Moreover, Textronics' last written communication in March, 2007, expressly stated that, if no business agreement were ever reached, "we trust that Sensatex will reconsider its assertions and drop this matter." (*Id*.)

Given Textronics' express notice to Sensatex that the matter would be deemed dropped if no resolution were reached, the subsequent silence of almost eight years on the part of the patentee was even more misleading than the conduct at issue in *Radio Systems*. That is particularly true given adidas' public acquisition of Textronics in 2008 and subsequent public launch of the accused miCoach® products, which event did not result in any further claims of infringement from the patentee or its licensees. (SMF at ¶¶ 14-16, 27.) The almost seven years that passed from adidas' public acquisition of Textronics is more than twice the three years that passed from the acquisition at issue in *Radio Systems*. Collectively, these other circumstances are thus even more compelling in demonstrating misleading silence and inaction on the patentee's part than the conduct in *Radio Systems*.

US2008 7086179 1

Finally, Sarvint cannot evade the impact of its' predecessors' actions and omissions. It is "well-settled that in determining the length of delay, a transferee of the patent must accept the consequences of dilatory conduct of immediate and remote transferors. This includes any charges of infringement or threats of suit made by a predecessor." 6A Donald S. Chisum, *Chisum on Patents* § 19.05[2][a][ii] (Matthew Bender) (collecting cases).

## 2.    The adidas Defendants Relied on the Patentee's Misleading Conduct.

"The second element, reliance, is not a requirement of laches but is essential to equitable estoppel." *Aukerman*, 960 F.2d at 1042. The Federal Circuit explained reliance by reference to an example of an infringer building a plant "unaware of the patent." In that example, there may be prejudice but no reliance. *Id*. at 1043. Instead, "[t]o show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with building the plant." *Id*.

*Aspex Eyewear* likewise exemplifies reliance. There, after the patentee failed to respond to Clairiti's "letter asserting non-infringement," the alleged infringer, "Clariti[,] thereafter expanded its business involving the" accused products, "promoted the products at the International Vision Expo and enlarged its sales force during this period." 605 F.3d at 1312. This sufficed to support summary judgment because "Clariti need not prove precisely what alternative

13

paths it would have taken, or that every marketing decision was based on reliance on Aspex's silence." *Id.*

Here, Textronics and adidas were aware of the patent based on the communications that preceded the multiple years of silence and inaction. Ms. Burr confirmed her view that the discussions with Sensatex and history of Textronics' and adidas' actions in the market led her to believe "that Sensatex and GTRC had elected to drop the matter and not pursue any enforcement action" and that she "relied on that view in operating the business thereafter." (Burr Dec. at ¶ 22; SMF at ¶ 29.) As a result, the adidas Defendants, just like Clariti in *Aspex Eyewear*, expanded their business and invested heavily in "marketing and developing the NuMetrex® line of garments and the related miCoach® line of garments" that Plaintiff accuses. (Burr Dec. at ¶ 23; SMF at ¶¶ 30-32.) Reliance likewise was demonstrated by adidas not objecting to Sarvint's principal, Professor Jayaraman, speaking at an adidas-sponsored industry conference. (Burr Dec. at ¶ 21; SMF at ¶ 28.)

Finally, Textronics is, of course, itself entitled to rely upon the misleading silence and inaction by the patentee. But so too was adidas. It is a successor-in-interest and in privity with Textronics. *See Radio Sys.,* 709 F.3d at 1131 ("equitable estoppel applies to successors-in-interest where privity has been established"). Indeed, the facts here are virtually identical to the facts at issue in

*Radio Systems* where the alleged infringer, Radio Systems, had acquired Innotek –
the recipient of the patentee's original demands – and then expanded the business.
*Id*.  Similarly, here, adidas acquired Textronics, switched from another supplier
and incorporated Textronics' products and technologies into adidas' business while
Textronics' continued to sell its own line.  (Burr Dec. at ¶ 2, 8-9, 20; SMF at ¶ 14-
17.)

        **3.**     **Due to their Reliance, the adidas Defendants Would Suffer
               Material Prejudice if Plaintiff Were Allowed to Proceed.**

      For the third element, "the accused infringer must establish that it would be
materially prejudiced if the patentee is now permitted to proceed. As with laches,
the prejudice may be a change of economic position or loss of evidence."
*Aukerman*, 960 F.2d at 1043.  *Aspex Eyewear* provided an example of economic
prejudice in affirming the finding of estoppel.  There, the Federal Circuit "agree[d]
with the district court that Clariti's development of its AirMag® business, in
reliance on Aspex's silence after its aggressive letters, represents a significant
change in economic position and constitutes material prejudice sufficient to
support equitable estoppel."  605 F.3d at 1312.  Those undisputed facts sufficed
because alleged infringers "need not show a total loss of value in order to show
material prejudice" and, instead, "[p]rejudice may be shown by a change of
economic position flowing from actions taken or not taken by the patentee."  *Id*.

US2008 7086179 1

The undisputed facts demonstrate that Textronics and adidas were materially prejudiced by the patentee's misleading actions.   After the last written communication, adidas acquired Textronics and both parties substantially expanded their sales and investment activities in the business.  (Burr Dec. at ¶ 16-20, 22-24; SMF at ¶¶ 14-17, 27-32.)  Yet neither adidas nor Textronics heard from GTRC or any of its licensees concerning the '731 Patent again until Sarvint filed its Complaint.  (Burr Dec. at ¶¶ 17-18; SMF at ¶ 27.)  The prior communications and years of ensuing silence concerning the '731 Patent reasonably led adidas and Textronics to believe that no enforcement would occur.  (SMF at ¶¶ 27-29.)  That adidas and Textronics relied on, and were prejudiced by, the patentee's abandonment of its claim is confirmed by (1) adidas' substantial expansion and support of the Textronics business in the ensuing years and (2) the speaking invitation adidas issued to an inventor of the '731 Patent to an adidas-sponsored industry conference.  (Burr Dec. at ¶¶ 21-24; SMF at ¶¶ 28-32.)

Indeed, this case is on all fours to *Radio Systems*, where the alleged infringer expanded its business and was acquired, after which the acquiring party incorporated the accused technology into its own products.  709 F.3d at 1130-31.  Nor can the patentee's years of misleading silence be explained or excused.  For example, Sarvint alleges that from 2008 until the summer of 2012, GTRC sought to terminate its original license agreement.  (D.I. 21-1 at p. 9; SMF at ¶ 9.)  But at

16

no point during this time did Textronics or adidas receive any further communications from GTRC or any putative licensee thereof. In short, equitable estoppel fully bars Plaintiff's claim of infringement.

**B.    Laches Bars Plaintiff's Claim for Pre-Suit Damages.**

As an alternative ground for partial summary judgment, the adidas Defendants contend that the undisputed material facts demonstrate, at minimum, that laches bar Plaintiff's claim for pre-suit damages. To establish laches, an accused infringer must prove by a preponderance of evidence that a patentee "(1) unreasonably and inexcusably delayed filing an infringement suit (2) to the material prejudice of the accused infringer." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 767 F.3d 1339, 1343 (Fed. Cir. 2014) (citing *Aukerman*, 960 F.2d at 1028–29, 1045). A presumption that the delay is unreasonable, inexcusable, and prejudicial is triggered when the Plaintiff's delay exceeds six years. *Wanlass*, 148 F.3d at 1337. Once these presumptions have been triggered, the burden of evidentiary production shifts from the accused infringer to the patentee. *Id.*; *see also* Fed. R. Evid. 301; *Aukerman*, 960 F.2d at 1035–36. As explained below, laches is established here because of the unreasonable delay in bringing suit, the presumed and actual prejudice and the absence of any cognizable reason for delay.

**1.    The Patentee Unreasonably Delayed Bringing Suit Against the adidas Defendants.**

17

As *Aukerman* explained, a presumption of laches attaches where six years of delay are shown:

> By reason of the presumption, absent other equitable considerations, a *prima facie* defense of laches is made out upon proof by the accused infringer that the patentee delayed filing suit for six years after actual or constructive knowledge of the defendant's acts of alleged infringement. Without the presumption, the two facts of unreasonable delay and prejudice might reasonably be inferred from the length of the delay, but not necessarily. With the presumption, these facts must be inferred, absent rebuttal evidence.

960 F.2d at 1036.

Here, the undisputed material facts establish more than six years of delay from the patentee's actual knowledge of the accused Textronics' products that are also used in adidas' miCoach® products.  Likewise, the facts demonstrate that adidas' open and public acquisition of Textronics and subsequent release of miCoach® products incorporating Textronics' accused technology demonstrates constructive knowledge of adidas' alleged infringement.  Finally, for the same reasons discussed above, Sarvint is bound by its predecessors' inaction and delay in bringing suit.

## 2. Prejudice is Both Legally Presumed and Established by the Undisputed Material Facts.

As noted above, *Aukerman* establishes a rebuttable presumption of prejudice given the greater than six year delay here.  But even assuming that presumption, the undisputed material facts discussed above demonstrate the adidas Defendants

18

have suffered actual economic prejudice from delay in enforcement.  Indeed, in addition to the facts demonstrating reliance and prejudice already discussed, adidas' very public acquisition of Textronics a year after the last communication demonstrates yet another point of economic prejudice.

### 3.     No Legally Cognizable Excuses Justify the Patentee's Delay.

The presumptions that attach in light of the delay in bringing a suit may be rebutted with certain legally cognizable excuses.  *Aukerman*, 960 F.2d at 1033. Acceptable excuses include other litigation, negotiations with the accused infringer, wartime conditions and possible poverty under limited circumstances. *Id.*

None of the first three apply.  As to poverty, in *Legget v. Standard Oil Co*., 149 U.S. 287 (1893), the Supreme Court rejected "poverty or pecuniary embarrassment" as an excuse justifying a plaintiff's "postponing the assertion of his rights."  Thus, longstanding equity dictates that poverty alone is insufficient. Moreover, here, Sarvint avers that GTRC decided in 2008 to terminate Sensatex's license and then sought another exclusive licensee.  Yet at all times GTRC has remained the owner of the '731 Patent.  And, GTRC's public financial statements from 2008 confirm that it has had access to hundreds of millions of dollars in revenue over the relevant time frame and like assets as well.  (Hopkins Dec. at ¶ 3 & Ex. 5; SMF at ¶ 8.)  Thus, a poverty excuse is simply inapplicable here.

## V.     CONCLUSION

Based on the foregoing, the adidas Defendants respectfully request that the

Court grant summary judgment in their favor with respect to Plaintiff's claims.

*/s Mitchell G. Stockwell*
Mitchell G. Stockwell
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
mstockwell@kilpatricktownsend.com

Matias Ferrario
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27104

*Counsel for Textronics, Inc. and adidas*
*North America, Inc.*