IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SARVINT TECHNOLOGIES, INC.<br><br>    Plaintiff,<br><br>v.<br><br>TEXTRONICS, INC., ADIDAS NORTH AMERICA, INC.<br><br>    Defendants. | Civil Action File No.:<br>1:15-cv-00073-TCB<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
NOT IN DISPUTE IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and L.R. 56.1, Defendants Textronics, Inc. ("Textronics") and adidas North America, Inc. ("adidas") (hereinafter collectively, "adidas Defendants") set forth the following statement of material facts to which the adidas Defendants contend there is no genuine issue to be tried:

1. Plaintiff accuses, amongst other products "the Adidas miCoach Training apparel" (D.I. 21-3, at ¶ 26) of infringing the '731 Patent (D.I. 21-2, *i.e.*, Exhibit A to D.I. 21-1).

2. Plaintiff's chief scientist and co-founder is Professor Sundaresan Jayaraman, one of the named inventors of the '731 Patent. (D.I. 21-2, at p. 2; D.I. 21-3, at ¶ 2.)

3. adidas is an affiliate of Textronics, which is a wholly-owned subsidiary of the adidas International, Inc. (D.I. 34, at ¶ 2.)

4. The '731 Patent issued from the United States Patent and Trademark Office on November 29, 2005. (D.I. 21-2, at p. 2.)

5. Prof. Jayaraman and his named co-inventor, Ms. Park, assigned their rights in the '731 Patent to the Georgia Tech Research Corporation ("GTRC"). (D.I. 21-3, at ¶¶ 13-16.)

6. In 2000, GTRC sought "an exclusive licensee to assist in commercialization of the technology . . ., including the invention patented as the '731 patent[ and] Athena Ventures was selected as the exclusive licensee" and "created a related entity called Sensatex whose mission was to commercialize products" covered by the '731 Patent." (D.I. 21-3, at ¶¶ 18-19.)

7. Sensatex and/or Athena Ventures failed to "fund and commercialize the licensed technology" and "commercialization attempts remained stagnant for many years." (D.I. 21-3, at ¶ 19.)

8. GTRC's public financial reports state that, in 2008, it had operating revenues of $246,545,715 and $1,143,864 and current assets of $79,473,904, of which $14,709,615 were unrestricted. (Hopkins Dec., Ex. 5, at pp. 4-5 (original pagination of the document).)

9. "GTRC began negotiations in 2008 to terminate the exclusive license and return control of the technology to GTRC" and "[u]ltimately, GTRC and Athena Ventures reached an agreement in Summer 2012, the exclusive license was terminated, and GTRC regained full control of the '731 patent." (D.I. 21-3, at ¶ 20.)

10. GTRC thereafter searched "for an exclusive licensee that would assist Ms. Park and [Prof Jayaraman] with raising capital and commercializing the '731 patent." (D.I. 21-3, at ¶ 21.)

11. "In 2014, GTRC selected Sarvint as its exclusive licensee." (D.I. 21-3, at ¶ 21.) *See also* (D.I. 19, at ¶ 18) ("On April 14, 2014, GTRC awarded Sarvint an exclusive license to make, have made, sell, offer for sale, use and import products practicing claims of the '731 Patent.").

12. Sarvint's predecessors in interest to these exclusive rights in the '731 Patent are Sensatex and Athena Ventures. (D.I. 21-3, at ¶¶ 16-21.)

13. "In 2005, Textronics introduced the first consumer NuMetrex® garment to incorporate heart rate monitoring technology directly into the garment itself. The NuMetrex® line of apparel was Textronics' first commercialization of its smart-fabric technology." (D.I. 34, at ¶ 5 & Exs. 1A – 1G.) The NuMetrex® line of apparel was well-publicized and well-known to Sensatex and GTRC. (*Id*.; *see also id.* at ¶ 10 & Ex. 3.)

14. "In September 2008, adidas acquired Textronics, which is now part of adidas' Digital Sports Business Unit.  Since the Fall of 2008, Textronics has been operating as a subsidiary of adidas International, Inc." (D.I. 34, at ¶ 2.)

15. "Textronics continued selling the NuMetrex® line from its 2005 launch to the present day and adidas has likewise continued to sell miCoach® garments from 2008 until the present day." (D.I. 34, at ¶ 9.)

16. "adidas publicly launched the miCoach® line in 2008." (D.I. 34, at ¶ 7.)

17. "adidas had, before its acquisition of Textronics, offered other garments like the adidas-Polar Fusion, which contained sensor technology sourced from Polar.  Shortly after its acquisition of Textronics, adidas elected to offer miCoach® garments with Textronics' sensor technology that was also in the NuMetrex® line of garments." (D.I. 34, at ¶ 20.)

18. In 2005, Textronics' representatives were informed by Sensatex of patent rights owned by Sensatex. (D.I. 34, at ¶ 10 & Ex. 3.)

19. On December 17, 2005, Sensatex sent to Textronics an email that is attached as Exhibit 3 to the Declaration of Stacey Burr.  (D.I. 34, at ¶ 10.)  The email informed Textronics of Sensatex's patent rights and asserted that Textronics' newly introduced heart monitoring bra would interfere with those patent rights. (*Id.* at Ex. 3.)

20. From Sensatex's communications, "Textronics perceived Sensatex would potentially initiate enforcement proceedings concerning its patent rights [and] authorized Textronics' counsel to engage with Sensatex's counsel to address the dispute." (D.I. 34, at ¶ 11.)

21. In the Spring of 2006, Sensatex asserted to Textronics that the '731 Patent (amongst others) was infringed by Textronics' NuMetrex® sports bra. (D.I. 34, at Ex. 5.)

22. On March 17, 2006, Textronics provided Sensatex a 34 page letter with roughly 12 pages analyzing and explaining why the Textronics NuMetrex® sports bra did not infringe the '731 Patent. (D.I. 34, at ¶ 13 & Ex. 5.)

23. Sensatex did not respond until, almost one year later, on January 4, 2007, Sensatex's then-counsel made further patent allegations concerning the '731 Patent based on Textronics' NuMetrex® sports bra in view of Textronics' U.S. Patent Appl. Publ. No. 2006/0211934. (D.I. 34, at ¶ 14 & Ex. 6.)

24. On March 13, 2007, Textronics' then-counsel responded by letter that is attached as Exhibit 7 to the Declaration of Stacey Burr. (D.I. 34, at ¶ 15.) Textronics' letter maintained its position that the NuMetrex® sports bra did not infringe the '731 Patent. (*Id*. at Ex. 7, pp. 1-5.) Textronics' letter concluded by acknowledging that "the principals [were] discussing the terms of a possible business arrangement and/or license" but expressly stated that if no agreement

5

were reached "we trust that Sensatex would reconsider its assertions and drop this matter." (*Id.,* at Ex. 7, p. 6.)

25. Sensatex and Textronics were unable to "identify any suitable business arrangements." (D.I. 34, at ¶ 16.)

26. Plaintiff's First Amended Complaint avers that "Defendants have had knowledge of the '731 patent for at least a period of time . . . including discussions under Non-Disclosure Agreements in which Textronics, Inc. was made aware of the '731 Patent." (D.I. 19, at ¶ 26.) Plaintiff has, accordingly, sought to benefit from the prior communications between its predecessor in interest and the adidas Defendants.

27. But, after the March 2007 letter, there were no further communications to the adidas Defendants about alleged infringement of the '731 Patent until the present action was filed. (D.I. 34, at ¶¶ 17-18.)

28. Textronics talked to Sensatex concerning other matters since the March 2007 letter. (D.I. 34, at ¶ 21.) In September 2014, a named inventor of the '731 Patent was invited to speak at an adidas sponsored-conference. (*Id.*)

29. Textronics and adidas "believed that Sensatex and GTRC had elected to drop the matter and not pursue any enforcement action, as invited by Textronics' counsel [and] relied on that view in operating the business thereafter." (D.I. 34, at ¶ 22.)

6

30. "In reliance on that view, adidas and Textronics have substantially expanded the sales of the accused products since the 2006 and 2007 correspondence with Sensatex and GTRC."  (D.I. 34, at ¶ 23.)  adidas and Textronics have sold hundreds of thousands of dollars worth of the accused products worldwide since 2008.  (*Id*.)

31. adidas has invested roughly $150,000 per year since 2008 in marketing the NuMetrex® line of garments and related miCoach® line of garments.  (D.I. 34, at ¶ 23.)

32. Believing that the matter over the '731 Patent had been resolved, the adidas Defendants did not engage with Plaintiff's predecessors in interest to reduce the likelihood of an action or otherwise protect its investment in the NuMetrex® line of garments and related miCoach® line of garments.  (D.I. 34, at ¶ 24.)

Respectfully submitted, this 5th day of June, 2015.

>*/s/ Mitchell G. Stockwell*
>Mitchell G. Stockwell
>Kilpatrick Townsend & Stockton LLP
>1100 Peachtree Street NE, Suite 2800
>Atlanta, GA  30309-4528
>(404) 815-6500 (Telephone)
>(404) 815-6555 (Facsimile)
>mstockwell@kilpatricktownsend.com

Matias Ferrario (admitted *Pro hac vice*)
Caroline Wray (*Pro hac vice* to be filed)
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27104

*Counsel for Textronics, Inc. and adidas North America, Inc.*

8

US2008 7050548 2

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Peter F. Schoenthaler<br>Bryan Baysinger<br>PETER F. SCHOENTHALER, P.C.<br>3350 Riverwood Parkway, Suite 1900<br>Atlanta, GA  30339<br>Telephone:  (404) 592-5397<br>Facsimile:  (404) 891-6120<br>pfs@pfslawgroup.com | N. Andrew Crain<br>Dan R. Gresham<br>Eric G. Maurer<br>THOMAS HORSTEMEYER, LLP<br>400 Interstate North Parkway SE,<br>Suite 1500<br>Atlanta, GA  30339-5029<br>Telephone: (770) 933-9500<br>Facsimile:  (770) 951-0933<br>Andrew.crain@thomashorstemeyer.com<br>Dan.Gresham@thomashorstemeyer.com<br>Eric.maurer@thomashorstemeyer.com |

                                            */s/ Mitchell G. Stockwell*
                                            Mitchell G. Stockwell