## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SARVINT TECHNOLOGIES, INC.,

       Plaintiff,

vs.

TEXTRONICS, INC., and
ADIDAS NORTH AMERICA, INC.,

       Defendants.

Civil Action File No.:
1:15-cv-00073-TCB

## REPLY IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Local Rule 7.1C, Plaintiff Sarvint Technologies, Inc. ("Sarvint") hereby submits this Reply in support of its Motion for a Preliminary Injunction (Doc. 21) and in rebuttal to the Opposition Memorandum (Doc. 30) filed by Defendants Textronics, Inc., and adidas North America, Inc. (collectively "Defendant").

## A.    The Doctrine of Equitable Estoppel Does Not Bar Sarvint's Claims.[1]

Defendant has argued that Sarvint is unlikely to succeed on the merits because its suit is barred by equitable estoppel.  However, binding Federal Circuit precedent demonstrates that Sarvint will succeed on the merits of Defendant's equitable estoppel defense.

In *Meyers v. Asics Corp.*, 974 F.2d 1304 (Fed. Cir. 1992), the plaintiff obtained three patents in the relevant field between 1981 and 1986.  *Id.* at 1305. The plaintiff became aware of possible infringement "by late 1982."  *Id.*  A letter to a defendant dated November 9, 1983 requested a meeting with the defendant's president and suggested that the parties should negotiate a license under the existing patent and the pending patent applications.  *Id.*  By 1984, the plaintiff had asserted in phone calls and a letter that several models of defendant's product

---

[1] Because Defendant has filed for summary judgment on this issue, Sarvint will address equitable estoppel and laches in more detail in its response to the motion for summary judgment, which is due before the July 13, 2015 hearing on the preliminary injunction motion.

infringed the existing patents. *Id.* In a response letter, counsel for the defendant informed the plaintiff that the accused models did not infringe the patents and that a license was therefore unnecessary. *Id.* In a letter dated January 23, 1985, the plaintiff refuted the allegations and again suggested a license. *Id.* There was no additional contact between the parties until suit was filed on May 27, 1988, for infringement of the patents. *Id.*

A second defendant was notified of potential infringement by letter on November 9, 1983 and responded by letter on November 16, 1983, refuting the allegations of infringement and declining a license. *Id.* There was no additional contact until suit was filed in May 1988. *Id.*

The district court granted summary judgment to both defendants, finding that the plaintiff's "prolonged silence after an initial period of 'aggressive advocacy' [amounted] to bad faith because such silence could only cause the alleged infringers to believe that [the plaintiff] had knowingly abandoned his claims of infringement." *Id.* The plaintiff appealed the grant of summary judgment. *Id.*

On appeal, the Federal Circuit held that "the defendants must show that [the plaintiff's] statements and conduct supported an inference that [the plaintiff] did not intend to press an infringement claim against the defendants." *Id.* (internal

2

quotation omitted). *Id.* at 1308. Importantly, "the fact that [the plaintiff's] attempts to negotiate licenses were followed by a period of silence does not, in itself, constitute the necessary misleading conduct." *Id.* Rather, misleading silence must follow a threat of "immediate or vigorous enforcement of [a plaintiff's] patent right." *Id.* at 1309. Without a threat of litigation, a subsequent period of silence cannot be misleading. *Id.* The Federal Circuit reversed the grant of summary judgment and remanded. *Id.*

The current situation is identical to the situation encountered by the Federal Circuit in *Meyers*. In late 2005, the former licensee sent an email to Textronics regarding potential infringement of its patents by an upcoming product. Doc. 34-9, Exhibit 3 to Response to Motion for Preliminary Injunction. The letter specifically stated that the former licensee would "like to explore with [Textronics] how the two companies can work together to resolve this problem." *Id.* The letter did not threaten "immediate or vigorous enforcement" of the previous licensee's patent rights. *Meyers*, 974 F.2d at 1308.

The parties apparently had a telephonic conversation regarding which patents Textronics was infringing. *See* Doc. 34-10, Exhibit 4 to Response to Motion for Preliminary Injunction. The previous licensee then apparently sent an email identifying the relevant patents. *See* Doc. 34-11, Exhibit 5 to Response to

Motion for Preliminary Injunction.   There is no indication that either of these communications involved a threat of "immediate or vigorous enforcement." *Meyers*, 974 F.3d at 1308.

Textronics responded to the email by providing analysis to support its assertion that it did not infringe the patent.  Doc. 34-11, above.  Counsel for the prior licensee responded with an infringement analysis, and concluded the letter by stating: "I understand that [the prior licensee] is willing to license, or sublicense, the patents in question.  I recommend that the parties get together to try to work out a mutually acceptable license."  Doc. 34-12, Exhibit 6 to Response to motion for Preliminary Injunction.   There is no evidence that the prior licensee sent any additional communications to Textronics.   Accordingly, the entirety of the exchange was only an attempt to negotiate a license, and not a threat of "immediate or vigorous enforcement."  *Meyers*, 974 F.3d at 1308.  Equitable estoppel does not apply. *Id.*

Adidas relies primarily on *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305 (Fed. Cir. 2010).  However, in that case, the plaintiff "threatened an infringement suit under several patents … followed by silence for three years as to the patents now in suit[.]"  *Id.* at 1310.  Specifically, one letter noted: "It has been our policy and continues to be our strong intention to fully and vigorously enforce

our rights under the exclusive license[.]"  Given those circumstances, the Federal Circuit found the grant of summary judgment on equitable estoppel proper, focusing particularly on the fact that two letters could "fairly be understood as threats of suit for infringement[.]"  *Id.* at 1311, 1314.  Because none of the communications between the prior licensee and Textronics could fairly be understood as threats of suit for infringement, *Aspex Eyewear, Inc.* is inapposite and *Meyers* controls.  As detailed above, under *Meyers*, Adidas does not have a viable equitable estoppel defense.

**B.      Sarvint Has Shown a Strong Likelihood of Success on the Merits.**

       **1.      The accused products infringe the '731 patent.**

           **a.      The electrical lead is formed from one of the individually conductive fibers.**

Defendant argues that its "electrical lead" is not formed from one of the integrated individually conductive fibers.  Doc. 24 at 9.  However, Defendant's understanding of this claim limitation is inconsistent with the plain and ordinary meaning of the claim terms, as understood by one of ordinary skill in the art in view the intrinsic evidence in the patent and file history.  The cited claim language does not require that the electrical lead formed from one of the integrated individually conductive fibers is the entire lead from the sensor to the connector.  It merely requires electrical continuity (i.e., an unbroken electrical pathway) between

the fabric-based sensor and the connector wherein the fabric of the sensor forms at least some part of that lead.  Importantly, the fabric of the sensor does not need to form any more than the starting point of the lead.   Stated more simply, the cited claim language requires nothing more than an unbroken electrical pathway between the termination points of the fabric-based sensor and the connector, irrespective of the material of composition of the electrical lead.  Declaration of Dr. Sundaresan Jayaraman ("Jayaraman Dec."), submitted herewith, ¶¶ 36-37.

This is made apparent, for example, by Figure 3 of the '731 patent, which demonstrates an embodiment of the invention.  Reference number 14 is the fabric-based sensor and is described as a "knitted conductive thread for sensing."  An electrical lead is running out from the sensor to the connector and is described as a "conductive thread."  This demonstrates that the meaning of the language is only that the fabric-based sensor must form a lead to the connector, even if that lead to the connector is a lead to a wire which ultimately joins to the connector. Jayaraman Dec., ¶¶ 38-39.

Thus, Defendant's product infringes the "electrical lead" limitation of claim 1 of the '731 patent.[2]

---

[2] While Defendant suggests that only attorney argument supports the claim chart submitted with the original brief, that is plainly untrue.  Dr. Jayaraman, whose expertise as at least one of ordinary skill in the art are not seriously contested by

### b.   Defendant uses a "fully-conductive fabric."

Defendant argues, essentially, that the presence of any non-conductive fibers in a fabric makes it something less than fully conductive.  However, the plain and ordinary meaning of "fully-conductive fabric" to one of ordinary skill in the art is not a fabric that is entirely comprised of conductive fibers.  Jayaraman Dec., ¶ 40-43.   Rather, a fully-conductive fabric is one that is conductive throughout the fabric.   *Id.*   A fabric would be conductive, but not fully-conductive, if its conductivity was constrained, such as if it was only conductive along a particular axis. *Id.*

An analysis of the fabric-based sensor on the Defendant's product demonstrated that the fabric-based sensor was conductive throughout the fabric. *Id.*, ¶ 44.  While Defendant suggests that it contains non-conductive fibers, those fibers were insufficient to limit the conductivity of the conductive fabric as a whole.  *Id.*  Accordingly, Defendant's product meets the "fully-conductive fabric" limitation.

---

Defendant, stated that he reviewed the '731 patent, the submitted claim chart and the accused product and was of the opinion that each element of claim 1 of the '731 patent was found in the accused product as described in the claim chart.  Doc. 21-3, ¶ 26.

## 2.     United States Patent No. 3,888,240 to Reinhold does not anticipate the '731 patent.

Claim 1 of the '731 patent claims a fabric-based sensor comprising "a knitted or woven fully-conductive fabric including one or more individually conductive fibers integrated therein by the process of knitting or weaving the fabric."  Therefore, claim 1 describes conductive fibers woven or knitted into a fully-conductive fabric.

Upon review, *Reinhold* (US 3,888,240) discloses a disposable electrode assembly and method.  Jayaraman Dec., ¶ 48.  As stated in *Reinhold*, "[i]n accordance with the principles of the present invention, an attaching structure is provided which will maintain a plurality of flexible sheet form electrodes against the back of an infant in such a way as to maintain reliable non-adhesive contact over an extended period of time without strapping the infant to the incubator, without requiring the infant to wear tight fitting elastic garments or to be immobile."  Column 3, lines 17-24.

FIG. 1 and FIG. 4 of *Reinhold* are provided below.  *Reinhold* describes FIG. 1 as "illustrating the manner in which a preferred electrode assembly embodying the principles of the present invention is disposed in attached relation with an infant," where the principles of the present invention are stated above.  Column 3, lines 59-62.  Correspondingly, FIG. 4 of *Reinhold* is stated as "illustrating an

8

electrode assembly of modified form embodying the principles of the present invention."  Column 4, lines 1-4.



In reference to FIGs. 1 and 4, *Reinhold* also states that "the electrode assembly comprises a sheet-like pad 12 of soft pliable non-conductive material having an infant back receiving area 14. . . .  A plurality of separate flexible sheet form electrodes 16, 18, 20 and 22 of conductive particle impregnated plastic material are affixed in surface-to-surface engagement with the pad 12 so as to extend substantially through the back receiving area thereof."  Column 4, lines 15-24.  *Reinhold* adds that "it will be understood that the terms 'pads of soft pliable material' and 'flexible sheet form electrodes' are not limited to the preferred embodiments specifically described above but comprehend other types of construction."  Column 5, lines 37-41.

9

It is understood, however, that "other types of construction" should also satisfy and be consistent with "the principles of the present invention," as stated in the reference.  *Reinhold* states that "For <u>example</u>, the pad and electrodes could be formed of woven or knitted material with the electrodes being provided by electrically conductive yarns (e.g., carbon powder loaded resin or metallic coated thread) positioned in the fabric to engage the infant's back by the weaving or knitted operation."  Column 5, lines 41-47.  In this example, the 'pads of soft pliable material' is disclosed to be woven or knitted material, where  the pads of soft pliable material is also known to be non-conductive material as stated in column 4, lines 15-24.  Accordingly, the 'pads of soft pliable material' is in the form of woven or knitted non-conductive material in one "other type of construction." Jayaraman Dec., ¶ 51.

As also stated in this example, the 'flexible sheet form electrodes' are disclosed to be electrically conductive yarns "positioned" in the fabric.  It is noted that the term "positioning" is consistent with the previously used term "affixed" for the preferred embodiment.  *See* column 4, lines 15-24 ("conductive particle impregnated plastic material are affixed in surface-to-surface engagement with the pad 12 so as to extend substantially through the back receiving area thereof").

10

However, the terms "positioned" or "affixed" <u>do not</u> disclose or require that the conductive yarns be necessarily woven or knitted to form a fabric-based sensor, as described by claim 1.   Rather, the above-example only states that the fabric engages the infant's back by the weaving or knitted operation (of the non-conductive material), where the conductive yarns are positioned in the fabric.  *See* column 5, lines 41-47 ("positioned in the fabric to engage the infant's back by the weaving or knitted operation").  Jayaraman Dec., ¶ 53.

Further, FIG. 4 is stated as "embodying the principles of the present invention," in which flexible sheet form electrodes 16, 18, 20 and 22 are shown to be positioned or affixed on soft pliable non-conductive material 12.   Again, it is noted that the electrodes 18 are not shown to be woven or knitted with the non-conductive material 12.   Rather, the electrodes 18 are shown to be affixed or positioned on top of the non-conductive material.  Jayaraman Dec., ¶ 54.

Accordingly, *Reinhold* is legally inadequate in disclosing all of the features of claim 1, such as "a knitted or woven fully-conductive fabric including one or more individually conductive fibers integrated therein by the process of knitting or weaving the fabric."  Jayaraman Dec., ¶ 55.   Insofar as the remaining asserted claims recite elements or features similar to those recited in claim 1, *Reinhold* is

11

also legally inadequate in disclosing the subject matter of these claims for at least the same reasons.

**C.    Sarvint Would Suffer Irreparable Harm Without an Injunction**.

    1.    Sarvint did not delay in bringing suit

Defendant argues that Sarvint delayed in bringing suit.  Doc. 30 at 18-19. However, Sarvint brought sought shortly after acquiring rights to the '731 patent. Declaration of Palaniswamy Rajan ("Rajan Dec.'), submitted herewith, ¶ 3 & Exhibit A.   The Federal Circuit favorably noted the speed with which an exclusive licensee acted after obtaining a license when granting a preliminary injunction in a recent case.  *Trebro Mfg. v. FireFly Equip., LLC*, 748 F.3d 1159, 1171 (Fed. Cir. 2014) ("The evidence also demonstrates that Trebro recently acquired the patent from Mr. Brouwer's company and then filed suit almost immediately.").  Because Sarvint moved to enforce its rights almost immediately, Sarvint's speed favors a finding that it is suffering an irreparable harm.

Additionally, neither *R2 Medical Systems, Inc. v. Katecho*, 931 F. Supp. 1397, 1412 (N.D. Ill. 1996) nor *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1559 (Fed. Cir. 1997) involve a preliminary injunction, much less stand for the proposition that delay prior to acquiring a license is relevant to irreparable harm in the context of a preliminary injunction.   Accordingly, this

Court should defer to the Federal Circuit's reasoning in *Trebro*, and find that Sarvint's speed in enforcing its patent rights after obtaining a license favors the grant of an injunction.

> 2.   Defendant's infringement is eroding Sarvint's market share and prices and erecting significant barriers to entry

Defendant next argues that Sarvint's asserted harms are speculative because it is not in the market. Doc. 30 at 19-21. However, it is indisputable that if Sarvint, as the exclusive licensee of the '731 patent, were the only entity practicing the '731 patent, it would have 100% of the market of products practicing the '731 patent. As detailed in Sarvint's opening brief, Defendant's infringement is eroding both its market share and its intended pricing structure.

Additionally, Sarvint's expert provides substantial support for the assertion that Defendant's infringement will increase barriers to entry and decrease the likelihood that Sarvint's product will succeed. The decrease in the likelihood of success is not speculative, but well documented in the economics field. Declaration of Goutam Challagalla ("Challagalla Dec."), submitted herewith, ¶¶ 7-11. At no point did Sarvint's expert assume Sarvint would be a success; rather, he demonstrated that Defendant's infringement will create substantial barriers to entry and greatly reduce the likelihood that Sarvint will succeed. *Id.*, ¶ 11. Reducing the likelihood that a company can be successful is well documented in the literature

13

and not speculative.  Additionally, such a harm is irreparable, as there is no means for calculating the monetary value of such harms.  *Id.*, ¶ 15.

3.    A fabric-based sensor is essential to smart apparel

Defendant argues that Sarvint has failed to provide a nexus between the infringement and demand.  Doc. 30 at 22-24.  However, Defendant does not seriously dispute that a fabric-based sensor is essential to, and drives the demand for, smart apparel.[3]   Additionally, as covered in Sarvint's expert declaration in support of its original brief, while peripheral products such as phone applications may help Adidas compete, such phone applications would be meaningless without the apparel itself.  Doc. 21-5, ¶¶ 48-55, 62.

4.    Monetary damages are insufficient

As explained by Sarvint's expert in his initial declaration and reiterated above, monetary damages are insufficient to compensate Sarvint for Defendant's infringement.  Challagalla Dec., ¶ 15-20.

**D.    <u>The Balance of Equities Favors Sarvint.</u>**

As made clear in Sarvint's opening brief:

Adidas has billions of dollars in sales, which it can utilize in attempting to redesign its products in a manner to make them

---

[3] As discussed in more depth, above, Defendant is not correctly according the electrical lead term its plain and ordinary meaning in light of the patent and file history.  Accordingly, Defendant's arguments in this section are largely moot.

> noninfringing.   Sarvint, however, is a small start-up company that
> may never be able to establish a foothold practicing the '731 patent if
> Adidas's infringement continues.

Doc. 21-1 at 23-24.  In its response, Defendant states only that it has invested time

and money in the current product and that an injunction would render that

investment wasted.  However, with its resources, Defendant could design a product

that respects Sarvint's patent rights and does not infringe the '731 patent without

undermining the majority of its investment.  Accordingly, this factor continues to

favor Sarvint.

### E.   <u>The Public Interest Would be Served by a Preliminary Injunction</u>.

As made clear in Sarvint's opening brief, the public interest favors

protecting patent rights and fostering the innovation associated with protecting

those patent rights.  Additionally, because Sarvint could meet the public demand

for smart apparel once Defendant's infringement is enjoined, Defendant's

argument that the public interest is served by keeping its products on the market

for its additional features is meritless.  (Rajan Dec., ¶ 13).  Accordingly, the public

interest strongly favors a preliminary injunction

### <u>CONCLUSION</u>

For the reasons set forth above and in Sarvint's initial Brief (Doc. 21-1), this

Court should preliminary enjoin adidas's infringement.

This 11th day of June, 2015.

Respectfully submitted,

*/s/ N. Andrew Crain*
Peter F. Schoenthaler
Bryan Baysinger
**PETER F. SCHOENTHALER, P.C.**
3350 Riverwood Parkway, Ste. 1900
Atlanta, Georgia 30339
Telephone: (404) 592-5397
Facsimile:  (404) 891-6120
pfs@pfslawgroup.com

N. Andrew Crain
Dan R. Gresham
Eric G. Maurer
**THOMAS | HORSTEMEYER. LLP**
400 Interstate North Parkway SE, Ste. 1500
Atlanta, Georgia 30339-5029
Telephone: (770) 933-9500
Facsimile: (770) 951-0933
andrew.crain@thomashorstemeyer.com
Dan.Gresham@thomashorstemeyer.com
Eric.Maurer@thomashorstemeyer.com

*Attorneys for Plaintiff*
*Sarvint Technologies, Inc.*

16

## LOCAL RULE 7.1(D) CERTIFICATION

I hereby certify that certify that the foregoing brief has been prepared with one of the font and point selections approved by the Court in LR 5.1B.

This 11th day of June, 2015.

Respectfully submitted,

*/s/ N. Andrew Crain*
N. Andrew Crain
*Attorney for Plaintiff*
*Sarvint Technologies, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

SARVINT TECHNOLOGIES, INC.,

        Plaintiff,

vs.

TEXTRONICS, INC., and
ADIDAS NORTH AMERICA, INC.,

        Defendants.

Civil Action File No.:
1:15-cv-00073-TCB

## CERTIFICATE OF SERVICE

    I hereby certify that on this date a true and correct copy of the foregoing REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  was filed with the Court using the Court's CM/ECF service, the "Notice of Electronic Filing" of which is automatically generated by the Court's Electronic Filing System and constitutes service of the filed documents on counsel of record.

    This 11th day of June,  2015.        Respectfully submitted,

                                  */s/ N. Andrew Crain*
                                    Attorney for Plaintiff Sarvint
                                    Technologies, Inc.