Exhibit B

# DECLARATION OF SUNDARESAN JAYARAMAN

I, Sundaresan Jayaraman, hereby declare and state as follows:

1. I am over eighteen years of age, I am competent to testify to the matters stated herein, and the matters stated in this Declaration are true and correct and based on my personal knowledge, or, where I lacked personal knowledge, based on efforts that I have undertaken to verify the information, in my capacity as a corporate representative of Sarvint Technologies, Inc. ("Sarvint"), based on the records and books of Sarvint and the knowledge of its other past and present employees. This Declaration is being offered for any purpose allowed by law.

2. I am the co-founder and Chief Scientist at Sarvint, the Plaintiff in this matter.  Sarvint is a small start-up company.

3. I am the Kolon Professor in the School of Materials Science and Engineering at the Georgia Institute of Technology ("Georgia Tech").  My bio is available at http://www.mse.gatech.edu/faculty/jayaraman.

4. As stated in my bio, I have served on eight Study Committees for the Institute of Medicine and the National Research Council of the National Academies.

5. I am a founding member of the Institute of Medicine Standing Committee on Personal Protective Equipment in the Workplace.

1

6. I have also served on the Board on Manufacturing and Engineering Design of the National Academies and am a founding member of the National Materials and Manufacturing Board of the National Academies.

7. Sungmee Park and I are the inventors of United States Patent No. 6,970,731 ("the '731 Patent").

8. I am a recipient of the Georgia Technology Research Leader Award from the State of Georgia in large part because of my contributions to the technology and invention of the '731 patent and related patents.

9. The '731 patent pertains to garments with integrated sensors or other information infrastructure that allow the garments to monitor the user and/or the environment. For example, in one embodiment, such garments may be configured to monitor vital signs of the user, such as heart rate. This technology has a wide variety of useful applications, such as helping to prevent Sudden Infant Death Syndrome, allowing medics to monitor soldiers in combat, and/or to track and monitor athletic performance.

10. The prototype for the technology (shown below), which embodies features in the '731 patent, is known as the world's first Wearable Motherboard™, or the Smart Shirt.



11. The technological innovations conceived by Ms. Park and me, features of which are covered by the '731 patent and other related patents, have received numerous accolades and substantial media attention. Specifically, our innovations were referenced in LIFE Magazine's *21 Breakthroughs that Could Change Your Life in the 21st Century*. *See* Ex. 1, Collection of Awards and Recognitions. They were also featured in TIME Magazine's *Best Inventions of the Year 2001* and Newsweek Magazine's *10 Inventions That Will Change the World*. *See id.* Additionally, the Wearable Motherboard™ was awarded First

3

Prize out of 4,200 entries in the Modern Marvels Invent Now Challenge, conducted by The History Channel, The National Inventors Hall of Fame, and TIME Magazine. *See id.* The first Wearable Motherboard™ is housed at the Smithsonian Museum in Washington, DC. *See id.*

12. With respect to events that led up to the '731 patent, in 1996, the Navy issued an announcement requesting research into a sensate liner to assist with combat casualty care. Ms. Park and I responded to the announcement, and Georgia Tech and the Navy entered into a funding and research agreement.

13. In 1996, Ms. Park and I began researching the technology ultimately claimed in the '731 patent.

14. Ms. Park and I conducted our research that led to the '731 patent at the Georgia Institute of Technology in Atlanta, Georgia, where we maintained a laboratory in the School of Textile and Fiber Engineering (now known as the School of Materials Science and Engineering).

15. In 1997, Georgia Tech began the process of applying for patents on the research through its related entity, the Georgia Tech Research Corporation ("GTRC"). The '731 patent was filed in 2000 and is a continuation-in-part to patent applications filed as early as September 21, 1998. The '731 patent issued on November 29, 2005.

4

16. Ms. Park and I assigned our rights in the '731 patent to the Georgia Tech Research Corporation ("GTRC"), which is located at 505 10th Street, Atlanta, GA 30318.

17. In response to the substantial media attention, a number of requests were received to license the technology associated with our innovations or otherwise assist in its commercialization. However, at that time, a decision was made to continue focusing on improving and developing the technology in-house and not to enter into any licenses.

18. In 2000, research and development had progressed to the point that GTRC revisited the idea of selecting an exclusive licensee to assist in commercialization of the technology comprising our innovations, including the invention patented as the '731 patent. Athena Ventures was selected as the exclusive licensee.

19. Athena Ventures created a related entity called Sensatex whose mission was to commercialize products based on our innovations. Unfortunately, Athena Ventures failed to deliver on its promise to properly fund and provide capital for the efforts to commercialize our innovations, including those embodied in the '731 patent. Accordingly, mired in Sensatex's possession, commercialization attempts remained stagnant for many years.

20. As a result of Athena Ventures's and Sensatex's failure to fund and commercialize the licensed technology as promised, GTRC began negotiations in 2008 to terminate the exclusive license and return control of the technology to GTRC. Ultimately, GTRC and Athena Ventures reached an agreement in Summer 2012, the exclusive license was terminated, and GTRC regained full control of the '731 patent.

21. Thereafter, GTRC again searched for an exclusive licensee that would assist Ms. Park and me with raising capital and commercializing the '731 patent. In 2014, GTRC selected Sarvint as its exclusive licensee.

22. GTRC selected Sarvint because, among other reasons, Sarvint agreed to commercialize the technology in a manner consistent with the vision of the Inventors and GTRC. Additionally, both Ms. Park and I, among others, co-founded Sarvint so that we could maintain an active role in assisting and directing the commercialization of the technology.

23. One priority of Sarvint is to develop and commercialize products that will preserve and improve the quality of human life. Consistent with this goal, in addition to products designed for the athletic and sports apparel market that embody the technology of the '731 patent, Sarvint is working to develop products that can protect infants from Sudden Infant Death Syndrome and subsequently a product to assist the military in diagnosing and treating wounded combat

soldiers. Accordingly, any obstacle in Sarvint's ability to raise capital and finalize commercialization of its initial products for ultimate sale in the market negatively impacts Sarvint's goal to help preserve and improve the quality of human life.

24. Sarvint is currently in the process of designing a number of products that incorporate the technology of the '731 patent. It is Sarvint's intention and goal to manufacture and sell one or more such products in the summer of 2015, specifically a smart shirt product that uses conductive fibers to monitor a user's vital signs, which can then be communicated to and monitored by a smartphone.

25. I believe that I am at least a person of ordinary skill in the art of the invention of the '731 patent.

26. I have taken an opportunity to review the '731 patent, including claim 1 of the '731 patent. I have also taken an opportunity to review the claim chart that is Exhibit C to Sarvint's Motion for a Preliminary Injunction. Based on my technical understanding of the '731 patent and of Textronics's accused product, namely the Adidas miCoach Training apparel, as identified and described in the claim chart, it is my opinion that the each of the elements of claim 1 is found in Textronics's accused product in the manner described in the claim chart.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information or belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

Dated: April 8, 2015    Respectfully submitted,

By _____

Sundaresan Jayaraman, Ph.D.