IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SARVINT TECHNOLOGIES, INC.

    Plaintiff,

Civil Action File No.:
1:15-cv-00073-TCB

**JURY TRIAL DEMANDED**

v.

TEXTRONICS, INC., ADIDAS NORTH
AMERICA, INC.

    Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THE
MOTION FOR SUMMARY JUDGMENT THAT EQUITABLE ESTOPPEL
AND/OR LACHES BARS PLAINTIFF'S CLAIMS**

## I.   Introduction

Sarvint has failed to raise any genuine issue of material fact that would preclude the Court from granting Defendants' motion for summary judgment. Despite its attempts to manufacture a factual dispute by misconstruing the testimony of Defendants' corporate representative, Sarvint cannot avoid the undisputed evidence demonstrating that its predecessor charged Textronics with infringing the '731 patent in 2006 and 2007 and then followed its accusations with a prolonged period of silence. Nor can it dispute that during and as a result of this silence, adidas acquired Textronics, and both adidas and Textronics made substantial investments in marketing and developing the accused products.

The undisputed facts establish that Sarvint and its predecessors slept on their rights for ***more than nine years*** before bringing this action, and Defendants suffered prejudice as a result. Accordingly, Defendants are entitled to summary judgment that equitable estoppel and laches bar Plaintiff's claims.

### A.   Plaintiff's Claims Are Barred By Equitable Estoppel

#### 1.   Sensatex's Threat of Enforcement Followed by Its Silence as to Textronics' Alleged Infringement of the '731 Patent Mislead Defendants

Sarvint's predecessors mislead Defendants by accusing them of infringement and then failing to file suit for more than seven years after the parties' last communication regarding Defendants' alleged infringement of the '731 patent.

Sarvint argues that its silence *alone* did not mislead Defendants. D.I. 75, at 12-14. But Sarvint's misleading conduct consisted of more than just silence. As explained in Defendants' motion, Sarvint made a very clear accusation of infringement, which it followed with years of inaction and silence. D.I. 44-1, at 10-13.

Ms. Burr's deposition testimony is not to the contrary. When asked how Sensatex mislead Textronics, Ms. Burr explained that "from our perspective, Textronics, we're under the impression that this topic, the potential infringement had been thoroughly discussed and handled back and forth between patent attorneys . . . ." Plaintiff's Statement of Material Facts ("PSOMF"), Ex. C (D.I. 74-4) ("Burr Dep."), at 127:17-128:9. She further testified Textronics based this understanding on the fact that "there was a very long period of time where there hasn't been any conversation or dialogue between the organizations . . ." about Textronics' alleged infringement of the '731 patent. *Id.* at 128:13-129:10.

Thus, contrary to Sarvint's assertions, Textronics does not contend that Sensatex mislead it through silence alone. Rather, Sarvint's accusations of infringement, followed by its years of inaction and silence with respect to its infringement allegations, reasonably led Defendants to believe that Sensatex had accepted Textronics' patent attorney's suggestion to "reconsider its assertions and drop this matter" based on the ample evidence of noninfringement presented in his letter. Declaration of Stacey Burr (D.I. 34) ("Burr Decl."), ¶ 15 & Ex. 7. The

Federal Circuit has repeatedly held that similar conduct leads to equitable estoppel. *See, e.g., Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013); *Aspex Eyewear v. Clariti Eyewear,* 605 F.3d 1305, 1310 (Fed. Cir. 2010); *Aukerman*, 960 F.2d at 1041.

Sarvint's attempt to distinguish the numerous Federal Circuit cases supporting Defendants' motion by noting that "[t]he parties engaged in almost 2 additional years of negotiations" is unavailing.  While Textronics and Sensatex did continue to engage in business discussions following the exchange between their patent attorneys, none of these discussions related to Textronics' alleged infringement of the '731 patent.  Instead, they related to the potential acquisition of Sensatex by Textronics. *See* Burr Dep. at 91:10-22.  To the extent that Textronics was also interested in licensing Sensatex's patent portfolio, its interest stemmed from the fact that Sensatex's technology "was different than what [Textronics] used and [acquiring their patents] would just block or limit anybody else that potentially would want to come into the space." *Id.* at 92:9-22.  If anything, Sensatex's continued participation in what Textronics perceived to be "good faith explor[ation of] . . . opportunities and collaborations together," (*id.* at 128:1-9), without any further mention of Textronics' alleged infringement of the '731 patent, contributed to Textronics' false sense of security.

Sarvint's argument that "any belief of Defendants that there was no threat of an infringement lawsuit is more correctly derived from the fact that Defendants **knew** as of 2009 that Sensatex was no longer in business and GTRC could not 'claw back' the '731 Patent" (D.I. 75, at 14) also lacks merit. Even if Textronics learned that Sensatex had gone out of business in 2009, this was *two years* after Textronics' attorneys' March 13, 2007 letter rebutting Sensatex's infringement allegations. *See* Burr Decl., Ex. 7. This two-year silence alone was sufficient to mislead Defendants into believing that Sensatex did not intend to assert the '731 patent against them. *See, e.g.,* PSOMF ¶¶ 99, 100; Burr Decl. ¶¶ 21-22.

Additionally, even if Defendants were aware that Sensatex had gone out of business in 2009 and that GTRC could not immediately terminate Sensatex's exclusive license, Defendants were not aware of the circumstances that allegedly caused it to take *six years* for GTRC to reacquire the rights to the '731 patent and license the patent to Sarvint. The unreasonable delay between Sensatex's demise and the filing of this lawsuit further contributed to Defendants' belief that the exchange between Textronics' and Sensatex's attorneys had resolved the parties' dispute with respect to Defendants' alleged infringement of the '731 patent. Burr Decl. ¶ 22.

### 2. Defendants Relied on the Misleading Behavior of Sarvint and Its Predecessors

Plaintiff makes four arguments in response to Defendants' evidence of their reliance on the misleading behavior of Plaintiff and its predecessors. Each lacks merit. First, Plaintiff repeats its argument that Defendants could not have relied on Sensatex's years of silence as to Defendants' alleged infringement of the '731 patent because they knew that Sarvint had gone out of business. D.I. 75, at 14. But as explained above, Sensatex did not go out of business until years after the parties' final exchange regarding Textronics' alleged infringement of the '731 patent. It was during this time period—after Textronics' attorney sent Sensatex his final letter refuting Sensatex's infringement allegations and before Sensatex went out of business—that adidas acquired Textronics and incorporated Textronics' technology into adidas products in reliance on Sensatex's actions. Burr Decl. ¶ 2; PSOMF ¶¶ 57, 72-82. Meanwhile, Textronics continued to invest in marketing and selling its own line. Burr Decl. ¶¶ 2, 8-9, 20; PSOMF ¶¶ 84-96.

Moreover, Defendants heard nothing about the '731 patent for over *six years* after learning that Sensatex had "run out of cash." *See* PSOMF ¶ 45; Burr Decl. ¶ 18. Even though Textronics had been told that GTRC could not "claw back" Sensatex's exclusive license to the '731 patent, Defendants had no knowledge of any circumstances that would prevent Sensatex's successor-in-interest to the '731 patent, whether that ended up being GTRC or some other entity, from asserting the

5

patent against Defendants for over six years after Sensatex ceased to exist. Burr Decl. ¶ 22. Any difficulty GTRC may have encountered in recovering the rights to the '731 patent simply does not account for a silence of that length.

Plaintiff next asserts, without explanation, that "the fact that Defendants did not object to Jayaraman appearing at an industry conference pre-suit is not evidence of reliance especially given that Defendants did not even know of the existence of Sarvint Technologies or of Jayaraman's affiliation with Sarvint technologies [sic] until after Defendants were sued." D.I. 75, at 15. But Dr. Jayaraman's affiliation with Sarvint is irrelevant. Ms. Burr testified that would not have invited Dr. Jayaraman, who is the named inventor of the '731 patent, to speak a conference "[b]ut for [her] belief that the patent issues with GTRC and Sensatex were long closed." Burr Decl. ¶ 21. Thus, Ms. Burr's invitation to Dr. Jayaraman to speak at the Smart Fabrics & Wearable Technology 2015 conference plainly evidences that Defendants believed that the parties' dispute over the '731 patent had concluded and that they relied on this belief in inviting the named inventor on that patent to speak at the conference.

Third, Plaintiff asserts that Defendants "admit . . . that even if Sensatex had sent another letter in time, Defendants would not have modified their technology in response. *See* D.I. 75, at 16; PSOMF ¶¶ 101-102. This argument mischaracterizes Ms. Burr's testimony. Ms. Burr testified first that *Textronics* would not have

6

changed its technology even if Sensatex made another charge of infringement because *Textronics* did not believe that it infringed the '731 patent. *See* PSOMF at ¶¶ 101-102. But Defendants ignore that she also testified that adidas, being "a bigger entity" than Textronics that is "much more cautious about getting crossways around intellectual property," would have been much more likely than Textronics to change its business model based on a renewed allegation of infringement. BURR DEP., at 132:8-133:3. Moreover, even if Textronics, acting on its own, might not have *changed* the technology in its accused products if Sarvint had renewed its infringement allegations, this does not contradict Ms. Burr's statement that both Defendants relied on Sensatex's misleading behavior in continuing to invest money in marketing the accused products and developing new styles for the product line. *See* Burr Decl., ¶¶ 23-24.

      Finally, Defendants argue that adidas could not have relied on any belief that Sensatex had elected not to pursue an infringement action against Textronics in acquiring Textronics because Textronics disclosed Sensatex's threats to adidas during the due diligence process. D.I. 75 at 17. But the mere fact that Textronics disclosed Sensatex's threats of infringement to adidas does not, as Plaintiff suggests, mean that either party to the transaction believed that there was an ongoing risk that Textronics would be sued. To the contrary, adidas's acquisition of Textronics despite Textronics' disclosure of Sensatex's prior charge of

infringement indicates that adidas, like Textronics, believed that Sensatex's conduct indicated that Sensatex had elected not to pursue any infringement action related to Textronics' technology.

### 3. Defendants Suffered Monetary Prejudice as a Result of Their Reliance

Plaintiff also fails to raise any genuine issue of material fact as to whether Defendants suffered prejudice as a result of the patentee's misleading conduct. Sarvint does not dispute that after the parties' last written communication concerning Defendants' alleged infringement of the '731 patent, adidas acquired Textronics for a substantial sum of money, and adidas and Textronics substantially expanded their sales and investment activities in the business. PSOMF ¶¶ 71-73, 84-96; Burr Dep. 33:23-34:8. The Federal Circuit has repeatedly held that a party's "development of its business, in reliance on [a patent holder's] silence after its aggressive letters, represents a significant change in economic position and constitutes material prejudice sufficient to support equitable estoppel." *Aspex*, 605 F.3d at 1312; *see also Radio System*s, 709 F.3d at 1130-31 (affirming the district court's finding of equitable estoppel where the accused infringer expanded it business and was acquired by another party, which incorporated the accused technology into its own products.).

Plaintiff does not dispute that adidas made substantial expenditures to acquire Textronics and incorporate Textronics' technology into its own products.

8

*See* D.I. 74 ¶¶ 14, 17; PSOMF ¶¶ 57, 67-73.  Instead, Plaintiff says that adidas must not have relied on Sensatex's misleading silence in doing so because Textronics disclosed Sensatex's threats to adidas in connection with the acquisition.  D.I. 75, at 17.  For the reasons explained above, this argument fails.  adidas proceeded with the acquisition in spite of Sensatex's threat because of Sensatex's misleading behavior.

Plaintiff also does not dispute that Defendants invested in developing new styles of the accused products after their discussions with Sensatex ended.  PSOMF ¶ 19.  While, as Plaintiff points out, these stylistic changes "are distinct from technological development," (D.I. 75, at 17), Plaintiff fails to explain how this is legally relevant.  Any expenditures to develop the accused products can support a finding of economic prejudice.  *See Aspex,* 605 F.3d at 1312 ("Prejudice may be shown by a change of economic position flowing from actions taken or not taken by the patentee.").

Plaintiff further concedes that "adidas does spend approximately $150,000 - $200,000 annually on aggregate marketing on the NuMetrex Sports Bra and the adidas HRM products" (PSOMF ¶ 96) but argues that "such marketing costs would be spent regardless of whether the technology was changed or not."  Yet again, however,  Plaintiff fails to explain the legal relevance of this argument.  Regardless of what Defendants might have spent on marketing different products

9

had Sensatex not misled them, the fact remains that Defendants invested substantial amounts of money to market the accused products as they are in reliance on Defendants' belief that they would not be sued for infringement.

Thus, the undisputed facts establish that Defendants suffered economic prejudice as a result of their reliance on misleading conduct of Plaintiff and its predecessors. Accordingly, summary judgment that equitable estoppel bars Plaintiff's infringement claim is appropriate.

## II.   Laches Bars Plaintiff's Claim for Presuit Damages

Plaintiff does not dispute that Plaintiff and its predecessors-in-interest waited well over six years after learning of Textronics' alleged infringement to bring this action and that laches presumptively bars its claim for pre-suit damages. *See* D.I. 75, at 20-21. Plaintiff thus bears the burden of coming forward with sufficient evidence to raise a genuine issue of material fact that (1) its delay was reasonable or excusable or (2) that Defendants did not suffer prejudice as a result of the delay. *Aukerman*, 960 F.2d at 1031; *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334 (Fed. Cir. 1998). Plaintiff has failed to carry this burden.

### A.   Plaintiff Fails to Present Any Evidence Justifying Its Delay of Over Eight Years

Plaintiff first attempts to excuse its delay by arguing that licensing negotiations between Sensatex and Textronics justified its delay from 2006 to 2008. But for licensing negotiations to serve as an excuse, they must "ordinarily

10

be continuous and bilaterally progressing, with a fair chance of success, so as to justify significant delays." *In re Katz Interactive Call Processing Patent Litig.*, 712 F. Supp. 2d 1080, 1110 (C.D. Cal. 2010) *vacated in part on other grounds,* 639 F.3d 1303 (Fed. Cir. 2011) (quoting *AC. Aukerman Co. v. Miller Formless Co., Inc.*, 693 F.2d 697, 700-701 (7th Cir. 1982)); *see also In re Stuart Meyers Patent Litigation v. Brooks Shoe, Inc.*, 721 F.Supp. 588, 590 (S.D.N.Y. 1989); *Motorola, Inc. v. CBS, Inc.*, 672 F.Supp. 1033, 1036-1037 (N.D. Ill. 1986).

The evidence that Plaintiff presents indicates that the negotiations between Sensatex and Textronics proceeded sporadically at best and focused primarily on potential business arrangements between the parties rather than patent licensing. *See* Burr Dep. at 69:15-70:16 ("so from our perspective, we were taking a very specific point of view on it, that there wasn't infringement, but we were willing to continue or to have discussions about other business arrangements and collaboration.").   For example, Plaintiff presents no evidence of any communication between Textronics and Sensatex between March 2007 and January 2008.  *See* PSOMF ¶¶ 43-44, Exhibit J, p. 6.  A nine-month gap in communication is hardly indicative of "continuous" negotiations.

More importantly, Plaintiff admits that any negotiations between Sensatex and Textronics had ceased by late 2008.  *Id.* at 53.  Thus, Plaintiff cannot dispute

11

that it waited more than six years between the conclusion of any negotiations and filing this lawsuit in 2015.

Plaintiff's only explanation for its failure to take any action during this time period is that the "time period from 2009-2012 was the period of time where Sensatex had gone out of business and was attempting to sell their IP assets [PSOMF, ¶¶ 61-62, 65-66] while at the same time GTRC was attempting to 'claw back' the '731 rights from Sensatex." D.I. 75, at 22. It is well-established, however, that "poverty or pecuniary embarrassment" cannot justify a plaintiff "postponing the assertion of his rights." *Legget v. Standard Oil Co.*, 149 U.S. 287 (1893). Thus, the fact that Sensatex had gone out of business does not excuse its failure to pursue its infringement action against Defendants.

Moreover, Plaintiff fails to present any evidence showing why Sensatex's alleged retention of a license to the '731 patent prevented GTRC, as owner of the patent, from independently bringing suit against Defendants.[1] And Plaintiff provides no explanation whatsoever for the more than two-year delay between GTRC's re-acquisition of Sensatex's rights to the '731 patent in 2012 and the filing of this lawsuit in 2015.

---

[1] Although a patentee may lack standing to bring an infringement suit in its own name in certain cases in which the patentee has transferred all substantial rights in the patent to an exclusive licensee, Plaintiff has presented no evidence that such was the case here.

12

Finally, Plaintiff asserts that "[o]nce GTRC re-licensed the '731 Patent to Sarvint in 2014, Sarvint promptly brought this lawsuit in January 2015." D.I. 75, at 22.  But it is well-settled that Sarvint is bound by the dilatory conduct of its predecessors.  *See, e.g.*, 6A Donald S. Chisum, *Chisum on Patents* § 19.05[2][a][ii] (Matthew Bender) (collecting cases).  Plaintiff has thus failed to present any evidence rebutting the presumption that its *nine-year delay* between learning of Textronics' alleged infringement and filing this suit was unreasonable.

### B. Prejudice is Both Presumed and Established by the Undisputed Material Facts.

Prejudice is also presumed in this case.  Even if it were not, for the reasons discussed in Defendants' opening brief and above, the undisputed material facts establish that Defendants suffered economic prejudice as a result of Plaintiff's unreasonable delay in bringing suit.

Plaintiff fails to present evidence to the contrary.  In an attempt to rebut the presumption of prejudice, Plaintiff rehashes its meritless arguments that (1) Textronics did not rely on Plaintiff's delay in continuing to invest in the accused products because Textronics did not believe the products infringed, (2) Plaintiff's delay did not factor into adidas's decision to acquire Textronics because Textronics disclosed Sensatex's threats to adidas prior to adidas's acquisition of Textronics, and (3) adidas admitted that no *technological* development of the accused products

13

occurred during the laches period.  Each of these arguments fails for the reasons explained above.

Sensatex also argues that "the annual marketing expenditures cited by Defendants are not the type of prejudice sufficient to satisfy Defendants [sic] burden."  D.I. 75, at 24.  But the only case that Plaintiff cites in support of this contention, *Hemstreet  v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1294 (Fed. Cir. 1992), is distinguishable.  In *Hemstreet*, the plaintiff warned the defendant that it would likely sue the defendant for infringement after concluding a lawsuit against another accused infringer, and the defendant made a deliberate choice to ignore the warning and proceed with its business plans as if nothing had happened. 972 F.2d  at 1293-94.

Here, by contrast, the actions of Plaintiff and its predecessors led Defendants to believe that Plaintiff did *not* intend to enforce its patent rights.  Had Plaintiff brought its suit earlier, Defendants could have stopped selling the accused products or changed them to make an enforcement action less likely, and as a result, would not have spent hundreds of thousands of dollars marketing the accused products as they are.  *See* Burr Decl. ¶¶ 23-34.   Plaintiff has  not produced any evidence to the contrary and therefore has not raised a triable issue of fact that Defendants did not suffer economic prejudice as a result of Plaintiff's delay.  *See Avocet Sports Tech. Inc v. Polar Electro Inc,* No. C-12-02234 EDL, 2013 WL 1729668, at *9 (N.D.

Cal. Apr. 16, 2013) (distinguishing *Hemstreet* because the plaintiff presented no evidence that it had warned the defendant that it would bring suit at a later date and granting the defendant's motion for summary judgment of laches); *Bridgestone/Firestone Research, Inc. v. Auto. Club De L'Quest De La France,* 245 F.3d 1359, 1363 (Fed. Cir. 2001) (holding that evidence of investment in developing and promoting a trademark during the laches period was sufficient to prove economic prejudice for purposes of laches).

## III.  CONCLUSION

Based on the foregoing, the adidas Defendants respectfully request that the Court grant summary judgment in their favor with respect to Plaintiff's claims.

/s/ *Mitchell G. Stockwell*
Mitchell G. Stockwell
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
mstockwell@kilpatricktownsend.com

Matias Ferrario
Caroline K. Wray
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27101
(336) 607-7300 (Telephone)
(336) 607-7500 (Facsimile)
mferrario@kilpatricktownsend.com
cwray@kilpatricktownsend.com

*Counsel for Textronics, Inc. and adidas North America, Inc.*

## LR 7.1 (D) ND.Ga. CERTIFICATE

This is to certify that the foregoing Plaintiff's Complaint has been prepared using one of the font and point selections approved in LR 5.1ND.Ga.: Times New Roman (14 point).

*/s/ Mitchell G. Stockwell*
Mitchell G. Stockwell
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
mstockwell@kilpatricktownsend.com

*Counsel for Textronics, Inc. and adidas North America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Peter F. Schoenthaler
3350 Riverwood Parkway, Suite 1900
Atlanta, GA  30339
Telephone:  (404) 592-5397
Facsimile:  (404) 891-6120
pfs@pfslawgroup.com

Andrew Crain
Eric G. Maurer
Thomas Horstmeyer
400 Interstate North Parkway SE, Suite 1500
Atlanta, GA  30339-5029
Telephone:  (770) 933-9500
Facsimile:  (770) 951-0933
andrew.crain@thomashorstemeyer.com
eric.maurer@thomashorstemeyer.com

                                                */s/ Mitchell G. Stockwell*
                                                Mitchell G. Stockwell
                                                Kilpatrick Townsend & Stockton LLP
                                                1100 Peachtree Street NE, Suite 2800
                                                Atlanta, GA  30309-4528
                                                (404) 815-6500 (Telephone)
                                                (404) 815-6555 (Facsimile)
                                                mstockwell@kilpatricktownsend.com

                                                *Counsel for Textronics, Inc. and adidas North America, Inc.*