## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SARVINT TECHNOLOGIES, INC.

      Plaintiff,

v.

TEXTRONICS, INC., ADIDAS NORTH
AMERICA, INC.

      Defendants.

Civil Action File No.:
1:15-cv-00073-TCB

**JURY TRIAL DEMANDED**

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF
## ADDITIONAL MATERIAL FACTS

Pursuant to Local Rule 56.1(B)(3), Defendants Textronics, Inc. and adidas

North America, Inc. submit this response to Plaintiffs' Statement of Additional

Material Facts ("PSOMF") (D.I. 74-1).  In addition to the specific objections and

responses set forth below, Defendants generally object to Plaintiff's Statement as

violating L.R. 56.1's requirement that a respondent to a summary judgment motion

provide a "***concise***, numbered statement" of the "***additional*** facts which the

respondent contends are material and present a genuine issue for trial." L.R.

56.1B(2)(b); 56.1(B)(1).  Plaintiff's 107-paragraph statement, which repeats many

of the facts set forth in Defendants' Statement of Material Facts, is neither concise

nor confined to additional facts, as the Local Rules require.

## A.   THE HISTORY OF LICENSING OF THE '731 PATENT

**PLAINTIFF'S FACT STATEMENT 1:**

U.S. Patent No. 6,970,731 ("the '731 Patent") is owned by Georgia Tech Research Corporation ("GTRC"). [Docket No. 19, ¶ 17].

**RESPONSE:**

Defendants object to this statement of fact because it is supported by a citation to a pleading rather than to evidence in violation of L.R. 56.1(B)(1).

**PLAINTIFF'S FACT STATEMENT 2:**

In September 2008, Bob Kalik, the CEO of Sensatex sent a letter to Sensatex shareholders announcing that he was stepping down as CEO.[Declaration of Sundaresan Jayaraman, ¶¶ 2-4, attached hereto as Exhibit A; September 2008 Letter from Kalik to shareholders, attached hereto as Exhibit B].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

**PLAINTIFF'S FACT STATEMENT 3:**

The September 2008 letter stated that Sensatex was out of funds and had no personnel other than Bob Kalik. [Exhibit A, ¶ 4; Exhibit B].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

**PLAINTIFF'S FACT STATEMENT 4:**

2

As of September 2008 Sensatex was out of business and no further business operations were engaged in by Sensatex. [Exhibit A, ¶ 4].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

Defendants further object to this statement of fact to the extent that it is unsupported by the evidence cited.  Dr. Jayarman's declaration states that Dr. Jayaraman did not know of any further business operations engaged in by Sensatex, not that Sensatex did not in fact engage in any further business operations.

**PLAINTIFF'S FACT STATEMENT 5:**

In September 2008, Sundaresan Jayaraman, one of the inventors of the '731 Patent contacted GTRC to inquire whether anything could be done to aid in the commercialization of the '731 Patent. [Exhibit A, ¶¶ 2 and 5].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

**PLAINTIFF'S FACT STATEMENT 6:**

Between September 2008 and August 2012, Sundaresan Jayaraman actively and consistently continued to work with GTRC to determine whether the technology of at least the '731 Patent could be regained or the license to Sensatex could be terminated such that another licensee could commercialize the technology. [Exhibit A, ¶ 6].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

**PLAINTIFF'S FACT STATEMENT 7:**

Between September 2008 and August 2012, GTRC was consistently
working to regain the '731 Patent or terminating the license with Sensatex
consistent with GTRC's policies and experience in regaining technology from
other licensees. [Exhibit A, ¶ 7].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

**PLAINTIFF'S FACT STATEMENT 8:**

GTRC was cautiously pursuing regaining the '731 Patent because GTRC
had experienced significant delays in regaining technology in the past when other
licensees filed for bankruptcy and GTRC was attempting to avoid a similar
situation with Sensatex. [Exhibit A, ¶ 7].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

**PLAINTIFF'S FACT STATEMENT 9:**

The license between GTRC and Sensatex was terminated and GTRC had
reacquired rights to the '731 Patent by August 2012. [Exhibit A, ¶ 8].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

## PLAINTIFF'S FACT STATEMENT 10:

Upon learning that the license between GTRC and Sensatex was terminated, Sundaresan Jayaraman actively supported GTRC in obtaining a new licensee for the '731 Patent. [Exhibit A, ¶ 9].

## RESPONSE:

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

## PLAINTIFF'S FACT STATEMENT 11:

Sundaresan Jayaraman assisted in forming Sarvint Technologies, Inc. and introduced Sarvint Technologies to GTRC to obtain a license to the '731 Patent. [Exhibit A, ¶ 9].

## RESPONSE:

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

## PLAINTIFF'S FACT STATEMENT 12:

Ms. Stacey Burr appeared as Defendants 30(b)(6) representative as the person most knowledgeable at Adidas/Textronics to discuss the agreed upon noticed topics. [Deposition of Stacey Burr, Defendants 30(b)(6) corporate representative, p. 10, attached hereto as Exhibit C].

## RESPONSE:

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

## PLAINTIFF'S FACT STATEMENT 13:

The deposition topics were agreed upon by the parties and are attached as Exhibit 1 to the Deposition of Textronics & Adidas 30(b)(6) Deposition (hereinafter "Adidas Dep."). [Exhibit C, p. 7-8, Exhibit 1 to the Adidas Dep., attached hereto as Exhibit D].

## RESPONSE:

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

## B. TEXTRONICS ANNOUNCES THE NUMETREX SPORTS BRA

## PLAINTIFF'S FACT STATEMENT 14:

Textronics started as a venture backed start-up in March of 2005. [Exhibit C, p. 15].

## RESPONSE:

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

## PLAINTIFF'S FACT STATEMENT 15:

Ms. Burr was the Chief Executive Officer of Textronics between 2005 and September 2008. [Exhibit C, pp. 19, 36-37].

## RESPONSE:

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 16:**

In October 2005, Textronics announced the launch of the NuMetrex Sports Bra, a heart rate monitoring sports bra that was the first consumer garment incorporating "smart technology". [Exhibit C, pp. 18-19, 49].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 17:**

The NuMetrex Sports Bra was commercially released in fall of 2006. [Exhibit C, pp. 48-49].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 18:**

The NuMetrex Sports Bra as released in fall of 2006 was made out of nylon and spandex. It had two heart rate monitoring electrode patches in the garment.  It picks up the electrical cardio signal of the wearer, and allowed it to be transmitted to a watch, or a treadmill. [Exhibit C, p. 20, 48-49].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 19:**

The NuMetrex Sports Bra was fully developed by 2006. The only development after 2006 were related to fashion and garment form. [Exhibit C., p. 117].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 20:

The NuMetrex Sports Bra technology has not changed in any substantive way from 2005 to 2015. [Exhibit C, p. 21].

## RESPONSE:

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 21:

When the NuMetrex Sports Bra was released, there were no other competing commercial products on the market. [Exhibit C, p. 27].

## RESPONSE:

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

## C.    SENSATEX ALLEGES THAT TEXTRONICS INFRINGES THE '731 PATENT

## PLAINTIFF'S FACT STATEMENT 22:

Textronics became aware of Sensatex when Textronics' CEO Stacey Burr met Bob Kalik at a smart fabrics conference in Barcelona, Spain in 2005. [Exhibit C, pp. 47-48; Email from Bob Kalik dated December 17, 2005, Exhibit 2 to the Adidas Dep., attached hereto as Exhibit E].

## RESPONSE:

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 23:

At that meeting with Mr. Kalik, Mr. Kalik and Ms. Burr discussed Sensatex's patents relating to the use of textiles to collect sensory information from the body. [Exhibit C, pp. 49-50; Exhibit E].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 24:**

After hearing of the announcement by Textronics of the launch of the NuMetrex Sports Bra, Mr. Kalik sent an email questioning whether Textronics NuMetrex Sports Bra might read on Sensatex's patents. Mr. Kalik did not allege infringement. [Exhibit C, pp. 47-52; Exhibit E].

**RESPONSE:**

Defendants object to this statement of fact to the extent that it is unsupported

by the evidence cited. Contrary to Plaintiff's statement that "Mr. Kalik did not

allege infringement," the cited email from Mr. Kalik expressly states that "we

believe that your product is interfering with Sensatex patent rights." PSOMF Ex.

E.

**PLAINTIFF'S FACT STATEMENT 25:**

On March 17, 2006, Textronics' lawyers sent a letter to Sensatex asserting that Textronics did not infringe the '731 Patent. [Exhibit C, pp. 59-64. March 17, 2006 letter to Sensatex is Exhibit 4 Adidas Dep., attached hereto as Exhibit F].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 26:**

Textronics authorized the delivery of Exhibit 4 to Adidas' 30(b)(6) deposition. [Exhibit C, p. 60].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

## PLAINTIFF'S FACT STATEMENT 27:

Textronics' position in the March 17, 2006 was that Textronics did not infringe the '731 Patent either literally or under the doctrine of equivalents. [Exhibit C, pp. 61-64; Exhibit F, p. 32].

## RESPONSE:

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 28:

Textronics' position has always been that Textronics does not infringe the '731 Patent. [Exhibit C, pp. 61-64].

## RESPONSE:

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 29:

Sensatex responded to Textronics' assertion of non-infringement on January 4, 2007, stating that it strongly disagreed with Textronics conclusion that Textronics was not infringing the '731 Patent and expressed the opinion that "at least claim 1 of the '731 patent literally reads on your client's NuMetrex Sports Bra." [Exhibit C, pp. 71-73, January 4, 2007 letter from Sensatex lawyers, Exhibit 5 to the Adidas Dep., attached hereto as Exhibit G].

## RESPONSE:

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 30:

In the January 4, 2007 letter, Sensatex's lawyers acknowledged "I understand that Sensatex is willing to license, or sublicense the patents in question. I recommend that the parties get together to try to work out a mutually acceptable license." [Exhibit G, p. 4].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 31:**

On March 13, 2007, Textronics' lawyers once again asserted that Textronics did not infringe the '731 Patent. [Exhibit C, pp. 87-89; March 13, 2007 letter from Textronic's lawyers, Exhibit 9 to the Adidas Dep., attached hereto as Exhibit H].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited

evidence.**PLAINTIFF'S FACT STATEMENT 32:**

In the March 13, 2007 letter, Textronics' lawyers acknowledged that the "principals were discussing the terms of a possible business arrangement and/or license for potential going forward activities, but if a suitable agreement cannot be reached, we trust that Sensatex will reconsider its assertions and drop this matter." [Exhibit H, p. 5].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 33:**

Textronics has never wavered in its conclusion and has never believed that Textronics infringes the '731 Patent under any theory. [Exhibit C, pp. 63-64].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 34:**

Textronics admits that Sensatex never agreed with Textronics assessment that Textronics did not infringe the '731 patent. [Exhibit C, pp. 70-71, 73].

**RESPONSE:**

Defendants object to this statement of fact as unsupported by the evidence cited.  In the cited testimony, Ms. Burr stated that she never saw "a definitive e-mail or a correspondence" in which Sensatex expressly admitted that Textronics did not infringe the '731 patent. She also stated that the January 2007 letter from Sensatex's attorney to Textronics attorney indicated that Sensatex believed Textronics infringed the '731 patent *as of the date of that letter*, which was sent before Textronics' attorney's March 13, 2007 letter rebutting Sensatex's infringement positions.  None of the cited testimony contains an admission that Sensatex *never* agreed with Textronics' assessment that Textronics does not infringe the '731 patent.

**D      SENSATEX AND TEXTRONICS ENGAGE IN NEGOTIATIONS TO LICENSE THE '731 PATENT**

**PLAINTIFF'S FACT STATEMENT 35:**

After the exchange of letters regarding infringement of the '731 patent, Textronics and Sensatex discussed Textronics taking a license to the '731 patent. [Exhibit C, pp. 73-74].

**RESPONSE:**

Defendants object to this statement of fact as unsupported by the evidence cited. The cited testimony, at most, indicates that Textronics and Sensatex discussed Textronics taking a license to the '731 patent after Sensatex's attorney's January 4, 2007 letter. But the "exchange of letters regarding infringement of the '731 patent did not end until March 31, 2007. PSOMF ¶¶ 31-32.

## PLAINTIFF'S FACT STATEMENT 36:

In August 2006, Textronics was contemplating in internal emails how to secure a license to the '731 patent, *i.e.*, "[w]e'd like to secure a license to the GA Tech patent portfolio…". [Exhibit C, pp. 74-75; August 2, 2006 email by Stacey Burr, Exhibit 6 to the Adidas Dep., attached hereto as Exhibit I].

## RESPONSE:

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 37:

The receipt of Mr. Kalik's December 2005 email concerning Sensatex's patents letter triggered "a long extended conversation with Mr. Kalik and Sensatex, which involved meetings and correspondence and the further work by Connolly Bove to look at our patent position versus Sensatex's patent position." [Exhibit C, p. 52].

## RESPONSE:

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 38:

This conversation between Textronics and Sensatex went on for several years and included intellectual property licensing of Sensatex's patents. [Exhibit C, pp. 52-54].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited

evidence..

**PLAINTIFF'S FACT STATEMENT 39:**

During this several year conversation, Textronics was of the belief that Sensatex was incapable of developing its business model and did not have the resources to develop its proposed product. [Exhibit C, p. 55].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

Defendants further object to this statement of fact to the extent that it is

unsupported  by the evidence cited.

**PLAINTIFF'S FACT STATEMENT 40:**

Textronics considered taking a license to the '731 Patent and engaged in evaluations relating to the decision to take a license. [Exhibit C, pp. 64-65, 67].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 41:**

Textronics was interested in doing business with Sensatex and Textronics and Sensatex also engaged in business discussions. [Exhibit C, p. 71].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 42:**

As part of the conversation between Textronics and Sensatex, Textronics seriously considered business options such as acquiring Sensatex in a business transaction or structuring their respective relationship whereby Textronics would focus on consumer applications and Sensatex would focus on military and medical applications. [Exhibit C, pp. 80-81; Exhibit 7 to the Adidas Dep., attached hereto as Exhibit J.

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 43:**

Textronics and Sensatex continued to negotiate business arrangements and licensing the '731 patent at least through March 13, 2007. [Exhibit C, pp. 73-74, 77-89; Exhibit J, p. 6].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 44:**

At some point in the conversation, it was apparent to Textronics that Sensatex was no longer "an operating company." [Exhibit C, p. 57].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 45:**

As of January 2008, Textronics was aware that Sensatex had "run out of cash". [Exhibit C., pp. 89-90; January 29, 2008 email, Exhibit 10 to the adidas Dep., attached hereto as Exhibit K].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 46:**

In response to learning that Sensatex was "out of cash", Textronics internally discussed approaching Georgia Tech Research Corporation to determine whether Textronics could license the '731 patent from GTRC. [Exhibit C, pp. 89-91; Exhibit K].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

Defendants object to this statement of fact as unsupported by the cited evidence.  The cited testimony and exhibit say nothing about contacting GTRC "to determine whether Textronics could license the '731 patent from GTRC."

**PLAINTIFF'S FACT STATEMENT 47:**

In response to learning that Sensatex was "out of cash", Textronics CEO Stacey Burr expressed that she "would love to have [the '731 patent]." [Exhibit C, pp. 91-92, Exhibit K].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

Defendants object to this statement of fact to the extent that it is unsupported by the evidence cited.  In the email Plaintiff quotes, Ms. Burr stated "I would love to have ***that patent***."  PSOMF Exhibit K (emphasis added).  Neither the cited

16

exhibit nor the cited deposition testimony indicates that she was referring

specifically to the '731 patent.

**PLAINTIFF'S FACT STATEMENT 48:**

As of February 2008, Textronics was performing due diligence on Sensatex for a potential business arrangement or technology license deal. [Exhibit C, pp. 93-94; February 3, 2008 Stacey Burr email, Exhibit 11 to the Adidas Dep., attached hereto as Exhibit L].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 49:**

In March 2008, Textronics attended a demonstration of Sensatex's SmartShirt product as part of the due diligence on Sensatex for a potential business arrangement or technology license transaction. [Exhibit C, pp. 96-99, March 16, 2008 Hassonjee email to Stacey Burr, Exhibit 12 to the Adidas Dep., attached hereto as Exhibit M].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 50:**

As of March 2008, Textronics and Sensatex were still discussing business arrangements and licensing the '731 patent. [Exhibit C, pp. 97-98].

**RESPONSE:**

Defendants object to this fact to the extent that it is unsupported by the

evidence cited.  Ms. Burr testified that in March 2008, Textronics and Sensatex

were discussing potential business relationships and licensing generally.  The

testimony cited says nothing about the potential licensing of the '731 patent specifically.

## PLAINTIFF'S FACT STATEMENT 51:

As of March 2008, Textronics had a moderate to high level of interest in negotiating a business arrangement or licensing the '731 patent. [Exhibit C, pp. 98-99].

## RESPONSE:

Defendants object to this fact to the extent that it is unsupported by the evidence cited.  Ms. Burr testified that in March 2008, Textronics and Sensatex were discussing potential business relationships and licensing generally.  The testimony cited says nothing about the potential licensing of the '731 patent specifically.

## PLAINTIFF'S FACT STATEMENT 52:

As of March 2008, Textronics understood that Sensatex had rights to the '731 "in perpetuity" vis-à-vis GTRC and there was no termination date on the license from GTRC to Sensatex. [Exhibit C., p. 99; Exhibit M].

## RESPONSE:

Defendants object to this statement of fact as not material to the issues before the Court in this Motion for summary judgment.

## PLAINTIFF'S FACT STATEMENT 53:

The conversation between Textronics with Sensatex regarding licensing the '731 Patent eventually ceased in late 2008. [Exhibit C, pp. 94-95].

**RESPONSE:**

Defendants object to this fact as unsupported by the evidence cited.  Ms.

Burr testified that late 2008 was her best "guess" for when Textronics and Sensatex

ended their discussions regarding potential business relationships and licensing

generally.  The cited testimony says nothing about whether discussions concerning

the '731 patent specifically continued until that date.

**PLAINTIFF'S FACT STATEMENT 54:**

Textronics considered reaching out to GTRC to discuss obtaining a license to the '731 patent, but did not because Textronics determined that Sensatex had the rights to the '731 patent. [Exhibit C, p. 100].

**RESPONSE:**

Defendants object to this fact as unsupported by the evidence cited.  The

testimony cited does not indicate that Defendants ever considered reaching out to

GTRC and says nothing about the '731 patent specifically.

**PLAINTIFF'S FACT STATEMENT 55:**

As of July 31, 2009, Textronics was aware that Sensatex was attempting to sell its assets. [Exhibit C, pp., p. 100-101; Sharma email to Hassonjee, Exhibit 13 to the Adidas Dep., attached hereto as Exhibit N].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 56:**

Upon learning that Sensatex was attempting to sell its assets, Textronics CEO Stacey Burr was interested in learning whether "the patent portfolio went back to GA Tech or if he still has it." [Exhibit C, pp. 103-104; August 1, 2008 Stacey Burr email to Hassonjee, Exhibit 14 to the Adidas Dep., attached hereto as Exhibit O].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

### E.   ADIDAS ACQUIRES TEXTRONICS, AND TEXTRONICS DISCLOSES SENSATEX'S INFRINGEMENT THREAT TO ADIDAS

**PLAINTIFF'S FACT STATEMENT 57:**

In September 2008, Adidas acquired Textronics through the execution of a purchase agreement. [Exhibit C, pp., 33, 36-37].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 58:**

In connection with the Adidas acquisition of Textronics, Textronics disclosed to Adidas that Textronics had been threatened with infringement by Sensatex. [Exhibit C, p. 104].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 59:**

Textronics made the disclosure to Adidas that Textronics had been threatened with infringement by Sensatex because Textronics considered the disclosure material to the Adidas transaction. [Exhibit C., p. 104].

**RESPONSE:**

Defendants object to this statement of fact as unsupported by the testimony

cited. In the testimony cited, Ms. Burr stated that information about Sensatex's

threats "·was just part of all of the documentation that we turned over to [adidas] as

part of the diligence process." [Ex. C, p. 104].

**PLAINTIFF'S FACT STATEMENT 60:**

In September 2008, Stacey Burr became vice president of wearable sports
electronics for Adidas. [Exhibit C, pp. 36-37].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

### F.   SENSATEX GOES OUT OF BUSINESS

**PLAINTIFF'S FACT STATEMENT 61:**

In December 2008, Textronics was aware that Bob Kalik had ceased being
CEO of Sensatex. [December 11, 2008 email between Kalik and Burr, Exhibit 17
to the Adidas Dep., attached hereto as Exhibit P].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

**PLAINTIFF'S FACT STATEMENT 62:**

In December 2008, Textronics was aware that Sensatex had hired an outside
consultant to sell Sensatex's assets. [Exhibit C., pp. 111-12; Exhibit P].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 63:**

In March 2009, Textronics CEO Stacey Burr spoke with a former Sensatex employee and learned that GTRC did not have a "claw back", *i.e.*, an ability for the original licensor to take back the IP, on the intellectual property licensed from GTRC to Sensatex. [Exhibit C, pp. 114-15; March 14, 2009 email from Burr to miscellaneous, Exhibit 18 to the Adidas Dep., p. 4, attached hereto as Exhibit Q].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

**PLAINTIFF'S FACT STATEMENT 64:**

Ms. Burr related to Textronics and Adidas:

> Vic Sharma – Vic is now with EY Yarns. Sensatex owes Vic money. One [of] Sensatex investors wants out and wants to cash out. Bill C hired to sell the IP. GA Tech does not have a claw back on the IP. Sensatex renegotiated a few years ago with GA Tech. Vic said Sensatex had it in perpetuity. Vic said he had a choice, from Bob Kalik,to take the IP, in lieu of pay. Not sure this makes sense. Or I guess Vic can wait to have Sensatex sell the IP and then be paid. Vic indicates that Sensatex, Vivometrics and Sharma have the 3 root system patents out there. Everyone in violation of one of the three.

[Exhibit Q, Exhibit C, pp. 113-16].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

**PLAINTIFF'S FACT STATEMENT 65:**

Textronics' corporate representative admitted that as of March 14, 2009, Textronics understood that Sensatex had ceased being an operating company. [Exhibit C, p. 116; Exhibit Q].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 66:**

Stacey Burr, Textronic's Chief Executive Officer at the time, testified:

Q      And would it be fair to say, reading this as an ordinary, intelligent person, [Sensatex] owing Vik money, Sensatex investor wanting out, to cash out, and hiring a consultant to sell the IP, is basically saying this is not an operating company at this point, Sensatex?

A      I would agree with that.  Vik was the only other employee that we knew of, so yes.

…

Q      So Kalik is gone, Vik Sharma is gone, you don't know of any other employees and they've hired Bill Crowley to sell the IP?

A      Yes.

Q      Is that an operating entity in your mind?

A      No.

[Exhibit C, p. 116.]

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**F.      ADIDAS ADOPTS TEXTRONICS' TECHNOLOGY**

**PLAINTIFF'S FACT STATEMENT 67:**

Prior to Adidas acquiring Textronics, Adidas had a business relationship with Polar to commercialize heart rate monitoring apparel through the sale of a men's shirt called the Adidas Polar Men's Shirt and a woman's Sports Bra called the Adidas Polar women's Sports Bra. [Exhibit C, pp. 33-34, 41].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 68:**

Polar provided Adidas with heart rate monitoring transmitters which were incorporated into Adidas apparel. [Exhibit C, pp. 34-35].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 69:**

Polar was a competitor to Textronics. [Exhibit C, p. 35].

**RESPONSE:**

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

**PLAINTIFF'S FACT STATEMENT 70:**

The Adidas / Polar woman's Sports Bra that was sold by Adidas pre-2008 used a polymer sensor. [Exhibit C, pp. 35-36].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 71:**

A polymer sensor is a non-textile electrode sensor for heart rate monitoring. [Exhibit C, p. 36].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 72:**

After Adidas' acquisition of Textronics, Adidas rapidly phased out the Adidas Polar Men's Shirt and the Adidas Polar women's Sports Bra. [Exhibit C, p. 42].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 73:**

After Adidas' acquisition of Textronics, Adidas replaced the adidas Polar Men's Shirt and the Adidas Polar women's Sports Bra with products utilizing the technology of the NuMetrex Sports Bra which Adidas called the Adidas HRM Sports Bra. [Exhibit C, pp. 42; 45].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 74:**

Adidas started selling the Adidas HRM Sports Bra between 2009 and 2010 and continues to sell the Adidas HRM Sports Bra today. [Exhibit C, p. 44].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 75:**

The Adidas HRM Sports Bra utilizes the same underlying technology as the NuMetrex Sports Bra. [Exhibit C, pp. 44-45].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 76:**

The Adidas HRM Sports Bra utilizes a textile electrode sensor rather than a polymer sensor. [Exhibit C, p. 47].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 77:**

Adidas started selling the Adidas HRM women's tank top shirt between 2009 and 2010 and continues to sell the Adidas HRM women's tank top shirt today. [Exhibit C, p. 45].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 78:**

The Adidas HRM women's tank top shirt utilizes the same underlying technology as the NuMetrex Sports Bra. [Exhibit C, pp. 45, 46].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 79:**

The Adidas HRM women's tank top shirt utilizes a textile electrode sensor rather than a polymer sensor. [Exhibit C, p. 47].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 80:**

Adidas started selling the Adidas HRM men's cardio shirt between 2009 and 2011 and has continued to sell the Adidas HRM men's cardio shirt today. [Exhibit C, p. 46].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 81:**

The Adidas HRM men's cardio shirt utilizes the same underlying technology as the NuMetrex Sports Bra. [Exhibit C, pp. 46-47].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 82:**

The Adidas HRM men's cardio shirt utilizes a textile electrode sensor rather than a polymer sensor. [Exhibit C, p. 47].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 83:**

The Adidas HRM products were fully developed by 2009-2011.  [Exhibit C, p. 117].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

### G.   DEFENDANTS' SALES AND MARKETING COSTS

**PLAINTIFF'S FACT STATEMENT 84:**

The NuMetrex Sports Bra brought in approximately $20,000 in sales revenue in 2005. [Exhibit C, pp. 120-21].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 85:**

The NuMetrex Sports Bra brought in approximately $500,000 in sales revenue in 2006. [Exhibit C, pp. 120-21].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 86:**

The NuMetrex Sports Bra brought in approximately $1,000,000 in sales revenue in 2007. [Exhibit C, pp. 120-21].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 87:**

The NuMetrex Sports Bra brought in approximately $1,500,000 in sales revenue in 2008. [Exhibit C, pp. 120-21].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 88:**

The NuMetrex Sports Bra brought in approximately $40,000 in sales revenue in 2009. [Exhibit C, pp. 120-21].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 89:**

The NuMetrex Sports Bra brought in approximately $40,000 in sales revenue in 2010. [Exhibit C, pp. 120-21].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 90:**

The NuMetrex Sports Bra brought in approximately $40,000 in sales revenue in 2011. [Exhibit C, pp. 120-21].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 91:**

The NuMetrex Sports Bra brought in approximately $40,000 in sales revenue in 2012. [Exhibit C, pp. 120-21].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 92:**

The NuMetrex Sports Bra brought in approximately $40,000 in sales revenue in 2013. [Exhibit C, pp. 120-21].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 93:**

The NuMetrex Sports Bra brought in approximately $40,000 in sales revenue in 2014. [Exhibit C, pp. 120-21].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 94:**

US sales of the Adidas HRM Sports Bra, the Adidas HRM women's tank top shirt, and the Adidas HRM men's cardio shirt have been fairly stable with a peak in 2009-2011. [Exhibit C, pp. 121-123].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 95:**

US sales of the Adidas HRM Sports Bra, the Adidas HRM women's tank top shirt, and the Adidas HRM men's cardio shirt average approximately $100,000 total for 2011. [Exhibit C, p. 123].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 96:**

Adidas spends approximately $150,000 - $200,000 annually on aggregate marketing on the NuMetrex Sports Bra, the Adidas HRM Sports Bra, the Adidas HRM women's tank top shirt, and the Adidas HRM men's cardio shirt. [Exhibit C, p. 124].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 97:**

[RESERVED]

**RESPONSE:**

Defendants object to this statement of fact as not complying with Local Rule 56.1 B(1).

## H.   TEXTRONICS' RELIANCE

**PLAINTIFF'S FACT STATEMENT 98:**

Textronics had the belief in 2007, early during the dialogue between the parties, that Sensatex was not going to sue Textronics because "there was a different change in tone from Mr. Kalik in terms of his conversations and interactions with [Textronics], more looking forward into business opportunities and collaborations." [Exhibit C, p. 126].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 99:**

Textronics did not have the same feeling of threat from the discussions with Sensatex in 2007 that Textronics did in 2006. [Exhibit C, pp. 126-127].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 100:

Textronics did not believe that Sensatex was trying to "set [Textronics] up during the discussions". [Exhibit C, p. 127]

## RESPONSE:

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 101:

Textronics would not have modified their technology even if Sensatex had sent them another demand letter in 2011 because Textronics does not believe Textronics' and Adidas' products infringe the '731 Patent. [Exhibit C, p. 129].

## RESPONSE:

Defendants concede that the Court may properly consider the cited evidence.

## PLAINTIFF'S FACT STATEMENT 102:

Stacey Burr, Textronic's Chief Executive Officer at the time, testified:

Q    How did Sensatex or GTRC or Sarvint, what did they do to mislead Textronics and Adidas?

A    I think there was a very long period of time where there hasn't been any conversation or dialogue between the organizations, and so from the -- from where we left off with Sensatex and Mr. Kalik in 2007, '08, '09, from my perspective, and I think from the perspective of Textronics and as we moved into Adidas, we've continued to develop and advance and market and promote and talk about smart apparel using the patents and technology that we've used from the beginning, with the belief that the previous conversations had thoroughly explored where we were from a patent infringement perspective, so hence, we haven't taken any actions or steps in the meantime to work at an alternative technology or to do anything

different around the form factors of the garments that we've been making and selling all this time.

Q    Back when the infringement allegations were hot and heavy, you didn't take any action then to change your technology?

A    No, because we were confident that based on the opinion and the input that we had from our legal counsel that we weren't infringing.  If we had believed we were infringing, we would have –

-

Q    I guess that's my point. You've always believed you weren't infringing?

A    Correct.

Q    So even if Sensatex had come to you in 2011 and made a similar allegation that they were making in 2006, you wouldn't have changed your technology then either, would you?

A    No. [Exhibit C, pp. 128-129].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 103:**

Stacey Burr, Textronic's Chief Executive Officer at the time, testified:

Q    Okay. Now, there are a couple of points in there. In what I understood you to say in your prior answer, and you covered a lot of ground, so I want to make sure we have an end, basically was the fact that you didn't hear anything from anybody on the '731 patent until you got sued; is that a fair characterization of how you feel you were misled?

A    Yeah. I think the time duration, and then the -- yeah, and then the public announcement of litigation, which I guess there's no other way to do it but publicly, but yeah. [Exhibit C, pp. 130].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 104:**

Stacey Burr, Textronic's Chief Executive Officer at the time, testified:

Q      My question is:  In hindsight, the reason you didn't hear from Sensatex, is it fair to say, in hindsight, is probably because Sensatex had ceased to exist during 2009?

A      Yes.

[Exhibit C, p. 131].

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

**PLAINTIFF'S FACT STATEMENT 105:**

Stacey Burr testified:

Q      Just to close the loop, other than the fact that a long time passed between your last conversation with Sensatex and being sued, is·there any other reason from Adidas Textronics' perspective that they were mislead?

A      Well, I mean, we weren't thinking about Sensatex between all this time, and sitting there thinking oh, they're misleading us.  I think the being mislead has come about with the advent of a lawsuit and feeling like there should have been awareness or understanding on the part of Sarvint about what the history was and what happened and what transpired back in 2005, '06, '07, as it related to Textronics.

**RESPONSE:**

Defendants concede that the Court may properly consider the cited evidence.

## I. DEFENDANTS' KNOWLEDGE OF SARVINT

## PLAINTIFF'S FACT STATEMENT 106:

Textronics learned about Sarvint Technologies for the first time in 2015 after being sued in this case. [Exhibit C., p. 134].

## RESPONSE:

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

## PLAINTIFF'S FACT STATEMENT 107:

Textronics learned that Sundaresan Jayaraamen was affiliated with Sarvint Technologies for the first time in 2015 after being sued in this case. [Exhibit C, pp. 134-135].

## RESPONSE:

Defendants object to this statement of fact as not material to the issues

before the Court in this Motion for summary judgment.

/s/ Mitchell G. Stockwell
Mitchell G. Stockwell
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
mstockwell@kilpatricktownsend.com

Matias Ferrario

Caroline K. Wray
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27104
(336) 607-7300 (Telephone)
(336) 607-7500 (Facsimile)
mferrario@kilpatricktownsend.com
cwary@kilpatricktownsend.com

*Counsel for Textronics, Inc. and adidas
North America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of November, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Peter F. Schoenthaler
3350 Riverwood Parkway, Suite 1900
Atlanta, GA  30339
Telephone:  (404) 592-5397
Facsimile:  (404) 891-6120
pfs@pfslawgroup.com

Andrew Crain
Eric G. Maurer
Thomas Horstmeyer
400 Interstate North Parkway SE, Suite 1500
Atlanta, GA  30339-5029
Telephone:  (770) 933-9500
Facsimile:  (770) 951-0933
andrew.crain@thomashorstemeyer.com
eric.maurer@thomashorstemeyer.com

*/s/ Mitchell G. Stockwell*
Mitchell G. Stockwell
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA  30309-4528
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)
mstockwell@kilpatricktownsend.com

*Counsel for Textronics, Inc. and adidas North America, Inc.*

37